David C. Parsell, Respondent, *v.* Abraham Stryker et al., Appellant.

A. let a farm to his grandson B, the plaintiff, during the life of the lessor, on condition that the lessee should occupy the place, and the lessor to have possession of a portion of the house on the premises, and the lessee to do all the work, and to have two-thirds of the produce, and the lessor one-third; the farm to belong to the lessee on the death of the lessor. It was further agreed, that the lessor should make a will devising the farm to the lessee, free of incumbrance. A. subsequently conveyed the premises to the defendant, and took a mortgage back for the purchase money which he assigned to his daughter, the defendant's wife, and died without making a will. In an action brought by the plaintiff to compel the defendant to convey the premises,—*Held,* that the lease was not within the prohibition of the section of the Constitution, forbidding the leasing of agricultural lands for more than twelve years. To bring a lease within that section, it must reserve rent, as rent, payable at stated periods. A grant or lease of land for life, or for a long term of years, for a specified consideration, whether payable in installments, or at one time, is not such a lease.

*Held* further, that an agreement on good consideration, and without fraud or undue influence, to devise land, is valid and will be enforced by compelling a conveyance from heirs of the promissor or purchasers with notice from him in his lifetime.

*Held,* therefore, that the action could be maintained, and that the defendant must convey the farm to the plaintiff.

(Submitted October 9th, 1869, and decided December 22d, 1869.)

Appeal from the General Term of the Supreme Court in the seventh district.

This was an action on the equity side of the court, to compel a specified performance of an agreement, to devise by will, real estate.

The cause was tried before a referee, and a judgment entered on his report in favor of the plaintiff, which was affirmed at General Term.

The facts, material on the points made on this appeal, as found by the referee, are as follows: In January, 1854, David Parsell, the grandfather of the plaintiff, owned the premises in question in this action; he was about eighty years old; his family, a second wife, Martha, and an imbecile daughter Margaret; his other children, Garret C., the father of plaintiff, and Hannah, the wife of the defendant Stryker. Garret C. had two children, the plaintiff and Milton. On the 19th day of January, 1854, David Parsell made an agreement with the plaintiff, to let him the farm in question for and during said David's natural life, on the condition that plaintiff was to do all the labor and keep the farm in repair, said David to find one-third the grain, do one-third the thrashing, bear one-third of the expense of keeping the buildings in repair; also to pay plaintiff $100 for building a board fence; plaintiff to have the right to take the timber for the fence off the farm. David reserved part of the dwelling-house, yard and garden, stable and barn room for one horse, &c. The farm tools of David to be left on the farm for use; the plaintiff to furnish and cut wood, and do chores; plaintiff to have two-thirds of produce, and David one-third; but all grain, stock and utensils on the farm at the decease of David, to belong to plaintiff.

It was further agreed, that in consideration of plaintiff doing what was required therein, David was to give the plaintiff in addition, the farm after his death, and agreed to execute in his lifetime, a will, and therein devise the farm to the plaintiff, free of all incumbrances, except such as may be necessary to make provision for the support of his wife and daughter. In the spring of 1854, the plaintiff entered into possession under the agreement, and performed its provisions until the death of David, which took place in August, 1858; on the 1st day of June, 1858, David executed a deed of said premises to the defendant Stryker,

consideration expressed $4,950, for which he took back a bond and mortgage, and at the same time and place assigned this bond and mortgage to the defendant Hannah, wife of Stryker, taking from her an agreement, as the only consideration, with two sureties, for the support and maintenance of Martha, wife of David, and Margaret, his imbecile daughter, during their natural lives; on the same day, and at the same time and place, he made a will, revoking all former wills; by said last will he did not devise the farm to plaintiff. The plaintiff had no knowledge of this deed, bond and mortgage, assignment, agreement or will; he was at the time in possession of the farm, and the defendants, Stryker and wife, knew the fact, had known it for some time, as well as the terms and conditions on which he went into possession; at his death David left his wife Martha, his son Garret C., his daughters Margaret and Hannah, him surviving, all of whom are made defendants herein.

As conclusions of law, the referee held that the contract was not an instrument in conflict with article 1, section 14 of the Constitution, relating to agricultural leases; that the covenant to give the plaintiff the farm after his death had a good and valuable consideration to support it; that the agreement was not void and unconscionable; that such covenant and the further covenant to devise the farm to plaintiff were agreements which a court of equity would enforce as against the heirs-at-law and grantees with notice; that Stryker took his conveyance, with notice of plaintiff's equitable right, &c., and had no right or title thereto, which is not subsequent to the defendant's right; that said defendant Hannah took the assignment of the mortgage with full knowledge of plaintiff's equities and possession, and had no equity as such purchaser superior to plaintiff, &c. &c.

*G. F. Comstock*, for appellants.

*James R. Cox*, for respondent.

JAMES, J.   It is first claimed that this agreement sought to be enforced, was entire and indivisible; that it embraced a lease for a farm during the life of the lessor, as well as a covenant to give the plaintiff a title to the farm after this lessor's death; and the lease being in violation of the fourteenth section of article 1 of the Constitution, renders the whole instrument void.

The fourteenth section of article 1 of the Constitution reads as follows: "No lease or grant of agricultural land for a longer time than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid." It was said in *Stephens* v. *Reynolds* (6 N. Y., 458), "the leases or grants of land prohibited by the Constitution, are such as were held by the tenants upon a reservation of an annual or periodical rent or service, to be paid as a compensation for the use of the estate granted.   It is still competent to make a grant for life, or lives, upon a good consideration to be paid for the estate, which consideration may be payable all at once, or by installments, or in services, so that it be not by way of rent.   By the Constitution, there must be a reservation of rent or service.   A reservation is defined to be a keeping aside, or providing, as when a man lets, or parts with his land, but reserves, or provides himself a rent out of it, for his livelihood; and a rent is said to be a sum of money, or other consideration, issuing yearly out of lands and tenements.   It must be profit, but it is not necessary it should be money. The profit must be certain, or capable of being reduced to a certainty.   It must also issue yearly." (2 Bl. Com., 41; Jacobs' Dict. title Rent.)

The consideration provided by the instrument in question, for the occupation of the farm specified therein, was not rent or services, within the intent of the clause of the Constitution above cited.   That clause of the Constitution, as all know, was not aimed at agreements like this, but against manorial leases.   The agreement was for the mutual occupancy and enjoyment of the farm, and utensils thereon, during the life of the grandfather; each aiding in carrying it on,

and caring for it; plaintiff to do the labor, and be at the expense necessary to keep the farm in repair; to furnish fuel and board the hands while culturing it; to do all necessary chores for the old man when he was unable to do them himself; and to furnish two-thirds of the seed, and of the stock necessary to keep on the farm, and the grandfather one-third; the grandfather to pay for thrashing one-third the grain, and one-third the expense of keeping the buildings in repair; and pay plaintiff $100 for building a board fence on the farm. The income and profit of the stock, the grain, the vegetables raised on the farm were to be divided two-thirds to the plaintiff and one-third to the old man, except, that all pears not taken for family use, were to belong to the latter; and on the death of the grandfather all the grain, stock and farming utensils on the farm to be the property of the plaintiff; and in further consideration for the performance by the plaintiff of the requirements of the agreement on his part, the grandfather was to give him the said farm after his death, free of all claim, except for the necessary support of the grandfather's wife, mother, and a provision for the support of the imbecile daughter, Margaret. "This was a continuing consideration, and not rent." (*Stephens* v. *Reynolds, supra.*) The services of the plaintiff upon the farm, and for the grandfather, were not entirely for the use of the farm, but in part for the use of the personal property, and the covenant to give him the farm at the grandfather's death, free of all claim but the obligation before stated.

I doubt if an action could be sustained for rent on a breach of such agreement; there was nothing certain to be paid; there might be no grain or vegetables raised, nor increase of stock, as there was no covenant to do either. In case of breach on the part of the plaintiff, an action to avoid the agreement, and recover the possession of the land with damages, would probably be the only remedy; that would not be a recovery for rents. In this view, the agreement is neither within the letter, spirit or intent of the constitutional prohibition. It may be further said, that all action on the lease

as a lease was ended, the plaintiff had performed and his performance had been accepted.

The agreement under consideration is very simple in intent and purpose, and sufficiently clear in expression to be fully understood. There is no imputation of fraud or undue influence in its procurements. It is said to be a hard and unconsionable agreement; but, considering the relation, situation and age of the parties, and the incumbrance attached to the farm in the support and maintenance of the two women, it is relieved even from that imputation. The proposition came from the grandfather; it said in substance, I am an old man, eighty years old, with no family but a wife and imbecile daughter; I have this farm and so much stock, farming implements, &c.; I am too feeble to carry on the farm; you take it and work it on such terms as long as I live, and at my death you shall have all there is on the farm, and I, by a last will and testament, will devise it to you free of all claim except for the support of my wife and my daughter, Margaret, for life. The proposition was accepted, and, as the referee finds, performed by the plaintiff. As between the parties, the agreement was fair; it was supported by a sufficient consideration as between them, even though inadequate as between strangers; it was therefore valid; and the plaintiff entitled to a specific performance of its obligations.

It was next urged that the referee erred in permitting the plaintiff to prove certain declarations of the deceased, viz.: 1st. That the deceased said to a town assessor in June, 1856, the farm does not belong to me, it belongs to David C. and should be assessed to him." 2d. "In 1857 deceased, on being informed by said assessor that the farm had been assessed to David C., said, "that is right; I do not own the property, and do not wish to pay taxes on it; it should be assessed to David C." 3d. "In speaking of the death of the wife of said David C., deceased said, 'I am afraid David will never get another women as good; I liked her first rate.'" 4th. "In speaking of Milton being on the farm, deceased said, 'David lost his wife and could not work it well, and Milton

came for a year.'" 5th. "On being inquired of if the farm went to David after his death, deceased said, 'I suppose so.'"

No portion of this evidence was material, except that fourthly stated, which had relation to plaintiff's performance of the agreement. The instrument under which plaintiff claimed was in writing, its execution was not denied, and his right for specific performance rested on that instrument, and its performance on his part. None of the evidence objected to proved, or tended to prove the execution or delivery of the agreement; and therefore upon that branch of the case its admission did no harm. That fourthly objected to tended to show that the occupation of plaintiff's brother Milton was with the grandfather's approval, and therefore not a breach of the agreement; the evidence was, therefore, proper, as was any other of the evidence objected to, if it tended to that purpose.

The agreement in question was in legal effect a sale and purchase of the farm; under it, until a breach at least, the equitable title was in plaintiff, the nominal legal title in the grandfather. His conveyances to Stryker only passed the same nominal legal title, subject to plaintiff's equitable title, as Stryker received his deed with full knowledge of plaintiff's possession and rights.

Had Stryker made known to plaintiff the conveyance to him, he could have availed himself of the covenants to the grandfather; but as no notice of such conveyance was given to the plaintiff, his performance to the grandfather was a legal performance of the agreement. The mortgage passed no greater rights than that possessed by the mortgagor. (2 Story's Eq., 784.)

As to plaintiff's equities, it made no difference whether the agreement was to deed the farm at a future day, on performance by plaintiff, or to devise the farm by a will made in the lifetime of the party, a court of equity will decree the specific performance of the latter agreement after death, where otherwise unobjectionable, equally with a contract to convey while living.

This question was fully considered and properly decided in *Johnson* v. *Hubbell*, in the Court of Chancery in New Jersey in 1856, of which I find a report in the *American Law Register*, vol. 5, page 177. On this branch of the case Chancellor WILLIAMSON said, "there can be no doubt but that a person may make a valid agreement, binding himself legally to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his own property at his pleasure; and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual, or for a particular purpose, as well by will as by conveyance, to be made at some specified future period, or upon the happening of some future event. It may be unwise for a man to embarrass himself as to the final disposition of his property, but he is the disposer by law, of his own fortune, and the·sole and best judge as to the manner and time of disposing of it. A court of equity will decree the specific performance of such an agreement, upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction." (*Rivere* v. *Rivere*, 3 Dessau Rep., 195; *Jones* v. *Martin*, 3 Ambler, 882; 19 Vesey, 66; 3 Ves., 412; *Podmore* v. *Gurnsey*, 7 Simons, 644 to 654.) The validity of an agreement to devise land by will was recognized by this court in *Stephens* v. *Reynolds, supra.*

The foregoing are all the questions presented on the argument of this appeal. We think the case was properly disposed of by the referee, and that the order of the General Term affirming the judgment below should also be affirmed.

All the judges concurring in the result, judgment affirmed.