New York County.—Hon. D. G. ROLLINS, Surro-
GATE.—August, 1882.

## GILES v. DE TALLEYRAND.

*In the matter of the estate of* ELIZABETH GILES, *deceased.*

- A testator can by suitable agreement, upon sufficient consideration, lawfully restrict his power of testamentary disposition.
- Code Civ. Pro., § 2743 is now the sole source of the Surrogate's jurisdiction to determine disputes as to third parties' demands, in the judicial settlement of the accounts of a decedent's estate, and contains the necessary implication that, where the validity of a debt, claim or distributive share *is disputed or has not been established*, he has no authority to determine the respective rights of the contending parties.
- On October 19th, 1863, the decedent, being then a resident of New York State, executed a will making certain bequests, and dividing the residue of her estate into three parts, two of which she gave to her two sons, and the third to the children of her deceased daughter.
- On May 25th, 1875, at Paris, France, she executed an instrument purporting to be signed and sealed in the presence of witnesses, whereby, "in consideration of natural affection and of the sum of one dollar," she covenanted and promised to pay to the widow of her deceased son 10,000 francs annually while decedent lived; agreed that all property of which she might die possessed should be equally divided among her children, and that, if any of them should be deceased, the children of such should take their parent's share; and authorized and directed her executor to pay after her death, to her daughter-in-law, as the natural guardian of the children of her said deceased son, one third of the net proceeds of her estate, "in accordance with her (my) will."   In November, 1879, testatrix executed a codicil, whereby she bequeathed to a granddaughter 15,000 francs.  Both will and codicil having been admitted to probate, payment, from the general estate, of the legacy given by the codicil was, on the settlement of the executor's account, objected to, on the ground that, by the instrument executed in 1875, testatrix bound herself as to the disposition she should make of her property by will.
- *Held*, that, a claim that the instrument executed in 1875 was such as to make inoperative a subsequent will or codicil not being plainly unreasonable and without legal foundation, the court had no jurisdiction to determine the matters at issue, on a settlement of the executor's account, and

Vol. I.—7

that distribution of the estate should be deferred, until the question of the validity and effect of the instrument was passed upon by a competent tribunal.

APPLICATION by William O. Giles, sole acting executor of the will of decedent, who died December 18th, 1879, for a final decree judicially settling his accounts as such executor and determining the persons among whom the moneys in his hands were to be distributed, and the amount or share to which they were severally entitled. The facts appear sufficiently in the opinion.

MURRAY HOFFMAN, *for executor.*

DELANO C. CALVIN, *special guardian for Murray Giles and other infants.*

BURRALL HOFFMAN, *for Florence Giles and others.*

JOSEPH K. MURRAY, *for B. de Talleyrand and another.*

C. ELLIOTT MINOR, *for B. de. Talleyrand, as trustee.*

THE SURROGATE.—Application is made for a final judicial decree settling the accounts of decedent's executor, and determining the persons among whom the moneys in his hands are to be distributed, and the amounts or shares to which they are severally entitled.

On the 19th day of October, 1863, the decedent, being then a resident of the State of New York, executed a will, whereby, after making certain bequests, she divided the residue of her estate into three parts, two of which she gave to her sons William O. Giles and J. Murray Giles, and the third to the children of her deceased daughter, Elizabeth Curtis.

On the 25th day of May, 1875, at Paris, France, the decedent executed a certain instrument, out of which the

present contention has arisen.   It commences as follows: "Whereas I, Elizabeth Giles widow of the late George Giles Esq. of the City of New York, United States of America, now residing in Paris, France, am possessed, etc."

It is not clear whether the decedent intended to describe herself or her deceased husband as "of the City of New York." The word "now" seems to indicate that she was referring to herself; while, on the other hand, the absence of a comma after the abbreviated word "Esq." suggests the other alternative.

By this instrument, the decedent, "in consideration of natural affection and of the sum of one dollar," covenanted and promised to pay to her daughter-in-law, Kate Giles, the widow of her deceased son, J. Murray Giles, the sum of 10,000 francs annually, while she (the decedent) lived.   And she agreed that all property of which she might die possessed should be equally divided among her children, and that, if any of them should be deceased, the children of such should take their parent's share. She also authorized and directed her executor to pay, after her death, to her daughter-in-law, Kate Giles, as the natural guardian of the children of J. Murray Giles, one third of the net proceeds of her estate, "in accordance with her (my) will." This covenant was executed at Paris, France.   Decedent's signature appears opposite a scroll containing the word "*seal*," and the instrument purports to have been signed, sealed and delivered in the presence of two witnesses whose names are appended thereto.

Four years later, in November, 1879, shortly before her death, the testatrix executed a codicil wherein she de-

scribed herself as "temporarily residing in the city of Paris, in the Republic of France," and whereby she bequeathed to her granddaughter, Bessie de Talleyrand, the sum of fifteen thousand francs.

Both will and codicil have been admitted to probate in this court. The payment, from the general estate, of the legacy of 15,000 francs to Bessie de Talleyrand is objected to by the other parties in interest, who base their opposition to such payment on the instrument whereby, as they claim, the testatrix bound herself as to the disposition she should make of her property by will. I am asked to decide whether that instrument is valid, and whether it was effectual to restrain or incapacitate the testatrix from bequeathing the legacy to her, granddaughter, or indeed from making any other testamentary disposition of her estate inconsistent therewith.

Unless the claim, that this instrument was of such a character as to make inoperative any subsequent will or codicil, is plainly unreasonable and without legal foundation, it seems clear to me that this court has no jurisdiction to determine the matters here at issue (Tucker v. Tucker, *4 Abb. Ct. App. Dec., 428*; Bevan v. Cooper, *72 N. Y., 317*). See, also, a list of all the reported decisions touching the Surrogate's jurisdiction over "disputed claims," in the case of Greene v. Day (*ante* 45).

Those decisions are expositions of the supposed meaning of certain provisions of the Revised Statutes, as to the authority of this court in the judicial settlement of a decedent's estate. They are somewhat conflicting, but the doctrine of the latest and most authoritative among them seems to have been incorporated into the Code of Civil Procedure. Mr. Throop, one of the Code commissioners,

declares, in his note to sec. 2743, that that section was purposely so worded as to put beyond dispute this vexed jurisdictional question.

The language of the section in question is as follows: "Where the validity of a debt, claim or distributive share *is not disputed or has been established*, the decree must determine to whom it is payable, the sum to be paid by reason thereof, and all other questions concerning the same." This is now the sole source of the Surrogate's jurisdiction, and contains, as it seems to me, the necessary implication that, where the validity of a debt, claim, or distributive share *is disputed or has not been established*, there is no authority in this tribunal to determine the respective rights of the contending parties.

These views are entirely consistent with those which the General Term of the Supreme Court has recently expressed, in Riggs v. Cragg (*26 Hun, 90*).

It was there held that this court had jurisdiction to construe the will of a testator, so far as might be necessary to enable it to settle an executor's accounts. Save for an *obiter* intimation in Bevan v. Cooper, I think that the contrary view has never been asserted by our courts. But the present controversy does not in any sense involve the construction of this decedent's will, and the case of Riggs v. Cragg (which arose, it may be said in passing, under the Revised Statutes and not under the Code) has therefore no application.

Now, what is the nature of this instrument? Does it tend to establish a claim adverse to the provisions of the will and the codicil?

That a testator can by suitable agreement, upon sufficient consideration, lawfully restrict his power of testa-

mentary disposition there can be no doubt (Parsell v. Stryker, *41 N. Y., 480*). Whether the instrument under consideration is or is not such an agreement is fairly open to dispute. The inquiry involves the consideration and determination of several questions of importance. For example, the ascertainment of the place of domicil of the deceased at the time of executing the agreement, is a mixed question of law and fact.

And there are also to be determined the effect and validity of such agreement, under the law of the jurisdiction, wherein at the time of its execution she had her domicil, and if such domicil be found to be a foreign one, the law there prevailing in regard to the instrument in question, and the inquiry how far such instrument, if otherwise valid, may be relieved of its executory character (should that be deemed a serious objection to its validity) by the performance, on the part of the deceased, of such of its provisions as were required to be discharged during her lifetime.

I do not feel at liberty to declare that the contention over these questions is so manifestly devoid of seriousness and substance, as to warrant my ignoring the instrument in question, and the claims to which it has given origin.

And, as the dispositions of the will and codicil would be very seriously affected by the agreement, in the event of its being sustained, I shall, until the question of its validity and effect is passed upon by a court of competent jurisdiction, defer distribution of this estate.

Ordered accordingly.