(26 Misc. Rep. 247.)

## LUDWIG v. BUNGART.

(Supreme Court, Special Term, Kings County. February, 1899.)

1. EQUITY—JURISDICTION—CONSTRUCTION OF WILL.
   A court of equity will not construe a will in respect to personal estate, where a trust is not involved, and where the surrogate's court would have jurisdiction under the statute; especially where the payment of the debts of the estate may consume all the personalty, so as to forestall controversy.

2. SPECIFIC PERFORMANCE—PAROL CONTRACTS—FRAUD.
   An action to enforce an oral contract to convey land, which is void under the statute of frauds, is not cognizable in a court of equity, unless the facts alleged make out a case of fraud, which is not shown by the mere fact that the services have been rendered (the consideration), since an action for the value of such services will lie.

3. PAROL CONTRACTS.
   A parol contract is not necessarily an oral contract, within the statute of frauds.

Action by Margaret Ludwig against Peter Bungart, individually and as executor of the will of Christina Bungart, deceased. Motion to dismiss the complaint. Granted.

Action to construe a will, and for specific performance, each being stated as a separate cause of action, and no objection having been taken to their being united. Motion to dismiss the complaint as to each cause of action separately, made at the opening of the trial.

The amended complaint for the first cause states as follows: Christina

Bungart died April 5, 1898, leaving a last will which has been admitted to probate in Kings county on October 12, 1898. The defendant is her residuary legatee and devisee. The fifth clause is a specific bequest to the plaintiff as follows:

"I give and bequeath to my beloved friend Margaret Ludwig of the borough of Brooklyn city of New York all my household furniture and store with contents of house known as No. 29 Hamilton avenue borough of Brooklyn."

In the said house the deceased kept a retail store on the ground floor for the sale of fishing tackle, tobacco, cigars and pipes. In the store was a safe, the contents of which were $2,500 in money, two gold watches, one watch chain and charm, silver tea spoons, silver back comb, earrings and breastpin, gold rings and gold bracelets, set of billiard balls, a soup ladle, sugar spoons, a small box and silver buckles; and in the said house was household furniture. The plaintiff demanded the said property from the defendant, but he refused to give to her the said safe and contents, and the counters, shelves and other fixtures of the said store, claiming they were not covered by the said bequest to the plaintiff, but went to him as residuary legatee. The prayer is that the said fifth clause be construed to include the said articles so withheld and to bequeath them to the plaintiff.

The amended complaint states for the second cause as follows: The deceased owned the aforesaid house and lot No. 29 Hamilton avenue. Her son died in 1890, whereby she was left alone in the said house, and conducting the aforesaid store, she being a woman of advanced age. She also owned two other houses in Brooklyn which are specified. Immediately after her said son's death the deceased agreed with the plaintiff, who had done services for her before her said son's death, that if the plaintiff would collect the rent of the said two other houses, and "have her son make such repairs as he could make" thereon, and "perform such work around the house No. 29 Hamilton avenue as might be requested," and attend to the payment of taxes on the said properties, and any messages which the deceased might want performed; and if the plaintiff would go to the store and residence of the deceased every evening and attend to the business and stay with her until time to close the store for the night; the deceased would "devise by her will or otherwise transfer" to the plaintiff the said house and lot 29 Hamilton avenue, together with the contents of the store, including the safe and contents, and the household furniture, to be the property of the plaintiff after the death of the said deceased. The plaintiff performed the said agreement, but the deceased did not transfer or devise to her the said house, but left a will devising it to the defendant, viz., the will mentioned in the first cause of action. What the son did is not alleged. The prayer is that the defendant be required to specifically perform the said agreement, and convey the said house and lot to the plaintiff.

It is admitted that the said agreement was oral.

Jesse Johnson, for plaintiff.
James Troy, for defendant.

GAYNOR, J. Equity has no jurisdiction to entertain a suit to construe a will in respect of personal estate, except as such construction may be incidental to the execution of a trust. In such case jurisdiction is taken under the head of trusts, which is a familiar head of equity, and the relation of executor to legatee belongs to such trusts. Bowers v. Smith, 10 Paige, 193; Wager v. Wager, 89 N. Y. 161. But the surrogate's court has power to construe wills in any respect incidental to the performance of the duties imposed upon it, including the settling of executors' accounts and the distribution of assets (Garlock v. Vandervort, 128 N. Y. 374, 28 N. E. 599); and that embraces the case of construction presented here. This court may therefore refuse to take jurisdiction of it, and it seems to

me that it ought to.  Wager v. Wager, 89 N. Y. 161;  Strong v. Harris, 84 Hun, 317, 32 N. Y. Supp. 349.  In addition to the general tendency of this court to decline its concurrent jurisdiction in matters of which the surrogate's court is given jurisdiction by statute, it is also to be noted in this instance that the payment of debts may consume all of the personalty and thus forestall the controversy now presented.  It is not even alleged in the complaint that there is enough of other personal property to pay the debts and cost of administration, so that the specific legacy to the plaintiff will not be reached for that purpose.

Nor does the second cause of action present a case for equity. An oral contract for the sale of land is void by the statute of frauds. Equity cannot take jurisdiction upon such a contract alone, and decree its performance.  Where it takes jurisdiction in the case of such a contract, it does so under the head of fraud, and not upon the contract.  The contract is only one fact in the fraud.  It then gives such relief as will prevent or undo the fraud.  It is not bound to decree a performance of the contract, but may give such other relief as will meet the ends of justice and fit the case.  That there is such a contract and a mere breach of it does not make a case of fraud.  The mere moral wrong of refusing to keep a contract does not amount to fraud.  The fact that the purchase price has been paid does not make a case of fraud, if it can be recovered back by an action at law.  That the purchaser was allowed to take possession and make valuable improvements, or was induced by the seller to do any other acts, of the benefits of which he would be deprived without the aid of equity, and of which he could not be deprived in good conscience, makes a case of fraud for equity.  Bisp. Eq. pt. 3, c. 1;  Miller v. Ball, 64 N. Y. 286.  The complaint here does not allege fraud, nor do the facts make out fraud.  The plaintiff did work in the nature of chores and errands for the deceased, under an alleged oral agreement that the deceased would "devise by her will or otherwise transfer" to the plaintiff a specified house and lot.  Her remedy would seem to be an action for her services. Shakespeare v. Markham, 10 Hun, 322. .

There is room for some misunderstanding on the subject owing to the varying use of the word "parol" in this state as applied to contracts.  Contracts are divided into contracts of specialty, and parol or simple contracts.  Contracts of specialty are all contracts under seal.  All other contracts are parol or simple contracts.  A parol or simple contract is therefore a written contract not under seal, or an oral contract.  The phrase "parol contracts" means all contracts not by sealed writing.  This was the settled nomenclature of the law.  1 Pars. Cont. 7;  Ballard v. Walker, 3 Johns. Cas. 65.  But in recent years in this state the word "parol" as describing contracts has come to be often used as though standing for oral only.  In some reported decisions it can be gathered from the context that parol is used as meaning oral (as in Lobdell v. Lobdell, 36 N. Y. 327), while in others (as in Heath v. Heath, 18 Misc. Rep. 521, 42 N. Y. Supp. 1087) there is nothing in the context to reveal whether the contract designated as parol was written or oral.  In other cases of oral

contracts where only the word "parol" is used, former decisions in respect of parol contracts are cited as governing, but on turning to them it is ofen found that they dealt with parol written contracts. For example, in Gall v. Gall, 64 Hun, 600, 19 N. Y. Supp. 332, where the contract was oral, and called "parol," the decision in Parsell v. Stryker, 41 N. Y. 480, is so cited, although the contract there was written. The question being of the statute of frauds in respect of an oral contract, or of whether the contract be definite enough, it is confusing to call it a parol contract and then cite as applicable to it decisions also dealing with contracts by the name "parol," but which are in fact in writing. When we turn to the statute of frauds, we do not find the word "parol" at all. It speaks with precision of contracts in writing to distinguish between them and oral contracts (section 8). It is difficult to see why the former word "parol" should be retained at all except in its established meaning, and why it should ever be used when the question is of the statute of frauds. To use it in a changed meaning only introduces more confusion into legal nomenclature and terminology, while to drop it and follow the words of the statute of frauds removes all misunderstanding.

I do not understand the decision in the case of Matthews v. Matthews (Sup.) 16 N. Y. Supp. 621. That was a common-law action for damages for breach of an oral agreement by defendant to make a written agreement to give the plaintiff the use of certain land with the chattels thereon during the defendant's life, and the ownership thereof upon his death. I should suppose that the statute of frauds was a complete defense, just as it would be to a suit in equity on the contract for specific performance. No action in law or in equity could be maintained on the contract. It would have to fail before the statute of frauds. The contract could not be proved at all. Whether a common-law action for damages for fraud, or on the case, could be maintained, I do not say. Equity could get jurisdiction of the matter only under the head of fraud, and on a complaint framed on that theory. I must believe that the case is wrongly reported, or else that the statute of frauds was not pleaded.

The complaint is dismissed.