COLT v. O'CONNOR et al.

(Supreme Court, Special Term, Kings County. April 3, 1908.)

1. SPECIFIC PERFORMANCE—PROCEEDINGS—SUFFICIENCY OF EVIDENCE.

In an action for the specific performance of a testator's contract, by which he agreed never to revoke a will giving plaintiff a part of his residuary estate, evidence examined, and *held* to show that the discontinuance of an action by plaintiff against the testator was not a consideration for the contract in question.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, § 393.]

2. MARRIAGE—LIABILITIES OF PARTIES TO ILLEGAL MARRIAGE.

Where the testator, with his wife living, entered into a marriage contract with plaintiff, after which the latter nursed him through a sickness, and where, through the testator's persuasion, but without knowledge of the other wife, plaintiff agreed to keep their marriage a secret, and did so, although for nearly two years he was almost constantly at her home, it could not be disputed that plaintiff had a good claim and cause of action against the testator for the injury he had caused her in marrying her while his wife was living.

3. ACCORD AND SATISFACTION—CONTRACTS—CONSTRUCTION—SCOPE AND EXTENT OF OBLIGATION.

Where plaintiff and defendant's testator arrived at a settlement as to their controversy and as to certain claims by plaintiff against the testator, and the latter made provision for plaintiff in his last will, and agreed never to revoke or modify the will, so as to defeat plaintiff's rights therein, and plaintiff agreed that upon faithful execution by the testator of the covenants to be performed by him she would release him "from all other and further claims, demands, and causes of action of every kind," and that thereupon she would take "no action at law or in equity to enforce any such other or further claim," plaintiff did not settle her claim or cause of action, but merely agreed that she would settle it when she received the property coming to her under the will.

4. SAME—PARTICULAR WORDS—"OTHER."

The word "other," in such a contract, plaintiff having but one claim against the testator, must be taken in the sense of "additional," so that the meaning would be that, upon the transfer to plaintiff of the portion of the estate devised to her by the will, she would take such portion in full payment of her claim, and make no further or additional claim on the same indebtedness or cause of action.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5070–5102; vol. 8, pp. 7741–7743.]

5. SAME—UNILATERAL CONTRACT.

The contract was unilateral and without consideration, and would have afforded no defense to an action brought by plaintiff upon her claim against the testator; the contract being, not a satisfaction, but what the law terms an accord executory, and no bar to such action until the performance was accepted.

6. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE.

A court of equity will not decree specific performance of a unilateral contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 89–99.]

7. CONTRACTS — CONSTRUCTION — SUBJECT-MATTER — PROPERTY AND RIGHTS THEREIN IN GENERAL.

Defendant's testator allowed plaintiff one-half of his residuary estate, and agreed never to revoke or modify the will so as to defeat plaintiff's rights therein; and plaintiff agreed that upon the faithful execution of

such covenants she would release the testator from certain claims she had against him. The will did not show of what the estate consisted, and there was no evidence that plaintiff, when she signed the contract, knew what property the testator owned, or what she was likely to get. *Held*, in an action for specific performance, that even if the will and contract settled and released plaintiff's claim, and thus became enforceable, they did not prevent the testator from transferring property to his wife for value, or from bequeathing his business to his nephew; plaintiff having no right but to half of the residuary estate.

Action by Flora A. Colt against Cornelius O'Connor, individually and as executor of the estate of Thomas W. Kiley, deceased, and others, to enforce the specific performance of the testator's agreement not to revoke a will giving plaintiff a part of his residuary estate. Judgment for defendants.

Lyon & Smith, for plaintiff.
David McClure, for executor.
William B. Hurd, for Catherine M. Kiley.
Otto F. Struse, for T. Willard Kiley.
Rutherford B. Kathan, for guardian ad litem.
David Thornton, guardian ad litem.

CRANE, J. The discontinuance of the action of Flora A. Colt against Thomas W. Kiley, brought by Attorney John S. Griffith, cannot be taken as a consideration for the contract of that defendant not to revoke the will of November 21, 1905, because it was not so taken by the parties and was not the price or motive of the contract. Mr. Scott, the lawyer who drew up the will and contract and acted, subsequent to the beginning of the action, for both parties. testifies:

"Mrs. Colt came to see me a few days before Mr. Kiley was there. She told me of the suit, and what distress it had caused her, because she said she had never intended to bring it, and did not know that she had brought a suit, and on learning that it was a suit she was in great trouble and wished to get rid of it, or to get out of it. She said she had been advised to consult Mr. Griffith with regard to her controversy with Mr. Kiley, and that he had advised her to make a demand of Mr. Kiley, and that he presented a paper for her to sign, which she signed, supposing it to be a demand. Q. Did she say why it was that she was distressed because the suit had been brought? A. Because she did not want to put Mr. Kiley to that trouble, or that kind of trouble; because she did not want to be involved in a lawsuit, because of the possible publicity of it. She wanted me first of all to get rid of that suit. Q. Did you suggest to her that she should see Mr. Griffith and have the suit withdrawn? A. I did. She was unwilling to do that because she was in such a state of opposition to Mr. Griffith. She did not refuse to have the suit withdrawn. Her reason was that she disliked Mr. Griffith because he had brought the suit when she did not intend to do it. Q. When she told you that she did not know the suit had been brought, and that in substance the suit was brought without her consent or authority, did she say anything about having given instructions to stop it? A. No; but did at that time. She instructed me at that time to stop it if I could. I said that it could be stopped, and that resulted in her sending a written order in her own name to Mr. Griffith to stop proceedings."

The action which the plaintiff says was brought without her knowledge or consent was stopped by her order before Mr. Kiley saw Mr. Scott, and before the will and contract in question were drawn. "I

had two or three interviews," continues Mr. Scott in his testimony, "with Mr. Griffith. He had been stopped, as his conversation showed by an order of Mrs. Colt, so that he could not carry it on, and the only question remaining was the question of his fee."

The plaintiff says that she consulted Lawyer Griffith at the advice of Mr. Kiley, to see what arrangements could be made. "Mr. Kiley," she testifies, "wanted to live with me, and he wanted to have this lawyer, if he could, arrange matters so that there could be some way out of the trouble. Q. Where did he (Mr. Griffith) get the $250,000 figure from? A. Out of his head, I suppose. Q. But you swore to the complaint, Mrs. Colt, in which you swore that that was the amount of your damage? A. I did not know that I was swearing to a complaint when I swore to it. Q. Did you make any arrangement with Mr. Griffith as to what part of $250,000 he should receive if you got it? A. I never mentioned a word about it, not a word. Q. Up to this time I understood you to say that the conversation between you and Mr. Kiley had been regarding this unfortunate condition you found yourself in? A. Exactly. Q. Do I understand that you went to see a lawyer at his instruction? A. He was perfectly willing for me to see a lawyer. Q. You went with his knowledge and consent? A. Yes, sir; I did not know when this was drawn up, and my lawyer knows it. Mr. Kiley knew it, and I did not know that this was such a demand as this until I saw it that evening after. Look here, I did not mean to bring a suit against Mr. Kiley at that time. Q. If you could get money without a suit, you would not bring the suit? A. I could have got it without a suit."

This testimony of Mr. Scott and Mrs. Colt we must accept as the truth, for the purposes of this case, and from it we gather that Mr. Griffith was consulted by Mrs. Colt, with the advice and counsel of Mr. Kiley, for the purpose of adjusting in some way the unfortunate circumstances in which they were both placed by their recent marriage while the former Mrs. Kiley was still alive, and that no suit against Mr. Kiley was thought of or intended; that Mrs. Colt never authorized the suit to be commenced, and did not know that she had signed a complaint; and that, when shortly after she became aware that such steps had been taken by her lawyer, she repudiated his action and stopped the suit  The summons and complaint were served in that suit October 27, 1905. the will and contract in question here were executed November 21, 1905, and the final discontinuance of the action not obtained till July, 1906; but the delay was due to no fault or desire of the plaintiff, nor because of any negotiation with Mr. Kiley, but solely because Mr. Griffith claimed a lien upon the cause for his services under an agreement with the plaintiff for a part of any recovery in the action, which, he claimed, was fully understood and authorized by her.

As the suit was brought without her knowledge and consent, was in fact no action of hers, and was through her own desire and direction stopped, so far as she could stop it, before any settlement of her claim with Mr. Kiley, certainly she cannot now consistently claim that the discontinuance of that action was the consideration for the settlement of her claim by the will and contract of November 21, 1905. Of

course, if there were no consideration for the contract of November 21, 1905, it must be conceded that this court will not attempt to enforce it. What, then, was the consideration, if any?

Mr. Thomas W. Kiley was a resident and manufacturer of this city, between 60 and 70 years of age, who, with a wife living, married Mrs. Flora A. Colt, a widow at Hammond, Ind. Mrs. Colt was also a resident of the borough of Brooklyn, city of New York, and had known Mr. Kiley ever since they were children; her father, Mr. Brown, having given much help and assistance to Mr. Kiley in his youth. That there had always been a great affection for each other appears from the letters passing between Mr. Kiley and Mrs. Colt, and their love and regard does not seem to have abated, even after the discovery by Mrs. Colt, some two years after their marriage, that Mr. Kiley had another wife living. The marriage in Hammond, Ind., took place in October, 1903, while the parties to it, with others, were on a trip to Chicago, and appears to have been hastened by Mr. Kiley's severe illness, requiring Mrs. Colt's personal attention and assistance, which would undoubtedly have caused remark and comment received from one not his wife. On the return journey to New York, for reasons which seem to have been sufficient to satisfy Mrs. Colt, Mr. Kiley persuaded her to keep their marriage a secret and to live without him at her then residence in Brooklyn, and while he was frequently, if not constantly, at her home, he never lived with her as her husband, offering always the excuse that his indiscretions with another woman had been such that his marriage to the plaintiff, if made known, would ruin him. Such were the strange relations between these parties till the summer of 1905, when Mrs. Colt discovered that Mr. Kiley's fears were well justified, as he had a wife living within a few blocks of her. While the plaintiff claims to have been greatly disturbed and agitated by these revelations, yet it is evident, from their correspondence and her continued reception of Mr. Kiley into her home, that her deep affection for him and sympathy for his physical and mental suffering survived the shock and lasted till his death.

In October of 1905, or some months after the plaintiff became aware of her void marriage, she consulted Lawyer Griffith, with the consent and knowledge of Mr. Kiley, in order, as shown in the above quotations from the testimony, to ascertain some way out of this trouble. An action having been brought against Mr. Kiley by Mr. Griffith, greatly to her displeasure, as their relations were pleasant and friendly, Mrs. Colt and Mr. Kiley went to Mr. Scott to adjust their difficulties and also get rid of the unauthorized lawsuit. It was then, and on November 21, 1905, that Mr. Scott drew up a will by which Mr. Kiley gave to Mrs. Colt, after many specific bequests to relatives, a part of his residuary estate, and also prepared a contract wherein it was agreed that the will would never be revoked. Both instruments were duly and properly executed, without any fraud or undue influence in securing Mr. Kiley's signatures. Thereafter, and on January 16, 1907, Mr. Kiley died, having revoked the said will and having otherwise disposed of his property, so that this action is brought to have the contract of November 21, 1905, specifically performed, and the property of which Mr. Kiley was at that time possessed, and not since transferred to bona

fide purchasers, impressed with a trust in favor of the plaintiff to the extent of the provisions to her in the will of the same date.

While not pertinent to the view I shall take of this case, it might in justice be said that Mr. Kiley had for some years assisted the plaintiff financially, given to her the house in which she lived, and at or soon after the making of his will of November 21, 1905, turned over to her about $43,000 in securities. The difficulty with the plaintiff's claim in this case is the consideration for the contract which she asks this court to enforce. That she had a good claim and cause of action against Mr. Kiley for the injury which he had caused in marrying her while his wife was living is beyond dispute. Fellows v. Emperor, 13 Barb. 92. If, therefore, this claim had been settled by the making and execution of the will of November 21, 1905, providing for the plaintiff, then I am of the opinion that a court of equity would have stepped in and held the testator's estate to the provisions of that will as having been made upon a good and valuable consideration. In other words, if the plaintiff had settled and released her claim in consideration of the will, equity would enforce the provisions of the will by impressing a trust upon the estate. Parsell v. Stryker, 41 N. Y. 480; Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265; Phalen v. U. S. Trust Co., 186 N. Y. 178, 78 N. E. 943, 7 L. R. A. (N. S.) 734; Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St. Rep. 647; Kine v. Farrell, 71 App. Div. 219, 75 N. Y. Supp. 542.

But the plaintiff did not settle her claim or release her cause of action. She merely agreed that she would settle it when she received the property coming to her under the will. The contract reads as follows:

"Memorandum of agreement, made the 21st day of November, 1905, between Thomas W. Kiley and Flora A. Colt, both of Brooklyn, New York, first and second parties hereto.

"Whereas, a settlement has been made as to a certain controversy between the parties and as to certain claims made by the second party upon the first party, and the first party as a part of such settlement has made provision for the second party in and by his last will and testament executed this day: Now, in consideration of the premises and of such settlement, and of the release and discharge hereinafter given, the first party further covenants and agrees with the second party that he will never alter or revoke or modify the said last will and testament, so as to defeat or diminish in any manner the provisions so therein made for her, and that there shall be paid, conveyed, transferred, and turned over to her all of that portion of his estate given, devised, and bequeathed to her in and by his said last will and testament, a copy of which is hereto annexed and made a part hereof. And the second party covenants and agrees with the first party that upon and in consideration of the faithful execution by the first party, his executors, administrators, and assigns, and trustees, of all the covenants and agreements so above to be performed by him, according to the true intent and meaning thereof, she will release and discharge the first party, his heirs, executors, trustees, administrators, and assigns, from all other and further claims, demands, and causes of action of every kind, and that thereupon she and her heirs, executors, administrators, and assigns will and shall take no action at law or in equity to enforce any such other or further claim.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

"[Signed] Thomas W. Kiley. [L. S.]<br>"Flora A. Colt. [L. S.]

"Witness: Wm. F. Scott."

At first reading there would be the impression that by this writing Mrs. Colt had settled and released her claim; but on closer examination this will be found not to be so. If the contract simply stated that the parties had settled their controversy, and as a part of that settlement the party of the first part had made provision for the party of the second part by his last will and testament, which he agreed not to revoke, there would be no doubt but what the settlement would have been sufficient consideration for the agreement not to revoke, and the contract become enforceable. If there were in fact a settlement, no technical language was required to express it, and it was not necessary to use words of release in order to bar and discharge the settled claim, as the courts would give effect to the intention of the parties. Morehouse v. Second National Bank of Oswego, 98 N. Y. 503.

But this is not all of the agreement, as by the other clauses the plaintiff specifically withholds release and discharge of her claim or cause of action until payment under the will, or, at least, until the will unrevoked becomes operative by the death of the testator. It is conceded that Mrs. Colt only had one claim or cause of action against Mr. Kiley, and that for the wrong done in marrying her when he knew that legally he could not. For this she had a cause of action which constituted the only controversy between the parties and the only claim which she had upon him, and it is this to which reference is made when the agreement recites:

"Whereas, a settlement has been made as to certain controversy between the parties and as to certain claims made by the second party."

But that this "settlement" was only an adjustment, or agreement to accept in the future certain property as a means of payment, which, when received, would discharge the claim, is evident from the remaining clauses of the memorandum, which are:

"And the second party covenants and agrees with the first party that upon and in consideration of the faithful execution by the first party * * * of all the covenants and agreements so above to be performed by him according to the true intent and meaning thereof she will release and discharge the first party * * * from all other and further claims, demands, and causes of action of every kind, and that thereupon she * * * will and shall take no action at law or in equity to enforce any such other or further claim."

As the second party had but the one claim, the word "other," used above, must be taken in the sense of "additional" (the Standard Dictionary), so that the meaning would be that upon the payment or transfer to her of the portion of the estate devised or bequeathed by the will she will take that portion in full payment and discharge of her claim, and make no additional or further claim or demand on the same indebtedness or cause of action; that is, "will release and discharge the first party from all other or further demands." In light of the facts, this clause of the memorandum is meaningless unless thus construed, and such interpretation is in harmony with the understanding of Mrs. Colt, for she testifies: "There was no settlement at Scott's office."

What, then, is this contract? Briefly this: Mrs. Colt has a claim against Mr. Kiley, which he agrees to pay by giving her a portion of

his estate by will. She agrees to accept this in payment, and when received will discharge and release her claim. It is a contract by a creditor to accept in settlement of the claim a certain kind and manner of payment at a future day. Mrs. Colt parts with nothing. Neither does she agree not to prosecute or enforce her claim in the meantime. The words "that thereupon she * * * will and shall take no action at law or in equity to enforce any such other or further claim," in connection with the other parts of the memorandum, import that if the will is unrevoked, and there is paid to her that portion of the estate devised, she will then take no action at law or in equity to enforce any additional or further demand; that she will not sue for more. It will be noticed that the agreement is not to take no action to enforce her claim or the claim, but to take no action to enforce any such additional or further claim, which must refer to something over and above what she will receive under the will.

As I read this contract it is as if Mrs. Colt had a note for $10,000 due from Mr. Kiley. They meet, and the matter is adjusted by Mr. Kiley making a will giving Mrs. Colt a portion of his estate and a contract not to revoke the will, while on her part she agrees to take that portion of the estate when transferred to her in payment of the note, and not to sue for more if it should be less than the amount due. Such an agreement or contract is unilateral, without consideration, and would have afforded no defense to an action brought by Mrs. Colt upon her claim against Mr. Kiley. · The contract would have been an accord, but not a satisfaction—what the law terms an "accord executory," and no bar to the action until performance was accepted. In Kromer v. Heim, 75 N. Y. 574, 31 Am. Rep. 491, it is stated:

"Accord is a satisfaction agreed upon between the party injuring and the party injured, which, when performed, is a bar to all actions upon this account. An accord executory, without performance, is insufficient; so, also, accord, with part execution, cannot be pleaded in satisfaction. The rule that a promise to do another thing is not a satisfaction is subject to the qualification that where the parties agree that the new promise shall itself be a satisfaction of the prior debt or duty, and the new agreement is based upon a good consideration and is accepted in satisfaction, then it operates and bars the action. The doctrine which has sometimes been asserted that mutual promises which give a right of action may operate and are good as an accord and satisfaction of a prior obligation must in this state be taken with the qualification that the intent was to accept the new promise as a satisfaction of the prior obligation. When the performance of the new promise was the thing to be received in satisfaction, then until performance there is not complete accord, and the original obligation remains in force."

Mr. Justice Andrews in Morehouse v. Second National Bank, 98 N. Y. 503, writes:

"If one, having a debt or claim against another, satisfies or releases it in consideration of an executory promise by the party owing the debt or duty, he cannot afterward enforce his original cause of action upon a mere failure by the other party to perform his promise; for he has his remedy to compel specific performance."

But in this Colt-Kiley agreement Mrs. Colt did not satisfy and release her claim, but reserved the right to enforce her original cause

of action in case Mr. Kiley failed to perform his promise. Also, in this case last cited, an agreement not to sue or permit suit to be brought was held to operate as a present release and discharge of the cause of action; but such cannot be the effect of Mrs. Colt's agreement not to enforce by action any further demand if the will be not revoked. See, also, Tilton v. Alcott, 16 Barb. 598; Panzerbeiter v. Waydell, 21 Hun, 161; Russell v. Lytle, 6 Wend. 390, 22 Am. Dec. 537. If Mrs. Colt had agreed not to sue upon the cause of action, then there would have been a consideration for Mr. Kiley's promise. There would have been a substitution of legal claims, within Billings v. Vanderbeck, 23 Barb. 552. But I find no such agreement in the memorandum.

A court of equity will not decree specific performance of a unilateral contract. "A party not bound by the agreement itself has no right to call upon a court of equity to enforce specific performance against the other contracting party by expressing his willingness in his plea to perform his part of the agreement. His right to the aid of the court does not depend upon his subsequent offer to perform the contract upon his part, but upon its original obligating character." Ide v. Brown, 178 N. Y. 26–39, 70 N. E. 101; Edson v. Parsons, 155 N. Y. 555–568, 50 N. E. 265; Mahaney v. Carr, 175 N. Y. 454–461, 67 N. E. 903. The contract in question was drawn by a lawyer selected by Mrs. Colt and subsequently acting for both parties, and this court cannot in this action reform it or read into it what is not there, but in view of all the circumstances must consider that the words used were carefully selected, used with their ordinary meaning, and express the intention of the parties; and that intention, as I have read the contract, does not furnish any consideration which the law recognizes for Mr. Kiley's agreement not to revoke his will, nor show that mutuality of undertaking which calls upon a court of equity to declare specific performance.

Mrs. Flora A. Colt was a woman of some experience in the world. She had been twice married before this last unfortunate alliance. Mr. Kiley was a very sick man, between 60 and 70 years of age, who for some unexplained reason had concealed his prior marriage, conveying real property to numerous purchasers as an unmarried man. The union in matrimony of Mrs. Colt and Mr. Kiley at Hammond, Ind., was, to put it mildly, peculiar, while the subsequent acquiescence of the newly wed wife to live apart from her husband for a year and a half, without once visiting the house where she knew him to be living, was so unnatural as to excite inquiry. The action commenced through Mr. Griffith against Mr. Kiley for $250,000 damages was repudiated later by the plaintiff, although she signed and verified the complaint; and she denied all knowledge that such a suit had been brought. She, however, consulted another lawyer, Mr. William F. Scott, and later brought to him Mr. Kiley, who was greatly in fear the public might gain knowledge of his doings, and who wanted Mr. Scott to act in his behalf, as well as for Mrs. Colt, so that upon the adjustment of affairs by the contract and will Mr. Scott represented both parties, and subsequently became trustee of $50,000 turned over by Kiley for the benefit of the woman he had wronged. Mr. Kiley naturally was excited, worried, anxious for secrecy, talked about criminal prosecutions, and at the ad-

vice of this attorney retained special counsel to protect him, should legal steps be taken to punish him.   This brief recital of some of the prominent facts in this case is sufficient to demonstrate that the court will not deny, but do, equity if it holds the plaintiff to the "letter of her bond" and construes her contract strictly.

But if this will and contract settled and released plaintiff's claim, and thus became enforceable, all that this court could do would be to give expression to the will, and that gave to Flora A. Colt one-half of the testator's residuary estate.   It contains no statement of what his estate consists, and there is no evidence that plaintiff, at the time she signed the contract, knew or had ever been informed as to what property Mr. Kiley owned, or what she was likely to get.   The testimony fails to disclose that Mrs. Colt had any knowledge or information about the testator's wealth or property, except what could be gathered from the will itself.   She signed away her claim for a residuary bequest, and that is all of her case.   The testator was left free to carry on his business, to conduct his affairs, and to make transfers of his property.   He agreed not to revoke his will; but he does not agree to leave any property, or, at least, any specific amount of property.   He certainly could transfer what he owned for value, and settle claims against him, if he chose.

One such claim was that of the grantees of his real property, which he had conveyed as an unmarried man, when in fact the property was subject to his wife's inchoate right of dower.   Had he obtained their money under false pretenses, and was he guilty of larceny?   His wife demanded her price for the release of her rights, and she got it in the transfers of other real estate to her and the O'Connor children.   The consideration for these conveyances I deem sufficient.

As for the business of Thomas W. Kiley & Co., the testator bequeaths his interest to his nephew, T. Willard Kiley, as a specific bequest in the will which the plaintiff seeks to enforce.   Therefore the gift of this interest in testator's lifetime in no way prejudices her.   It passed under the will of November 21, 1905, before her residuary interest could be determined.

The real property conveyed to Mrs. Kiley and the O'Connor children in consideration of the release of dower and this interest in Kiley & Co. is virtually the only property upon which the plaintiff desires to have this court impress a trust for her benefit; and, as I consider the title of the present holders and owners good, there is nothing to which a decree of specific performance could attach.

For the reasons above stated, I shall give judgment for the defendants.