LOUISE WHITON

*v.*

LANDER KIRKE WHITON *et al.*

*Opinion filed April 17, 1899.*

1. CONTRACTS—*agreement to make will in particular manner—when enforcible.* An agreement to make a will in a particular manner will be enforced in equity after the promisor's death, as against heirs, devisees and personal representatives of the deceased person, where the agreement is established by clear proof and the consideration therefor is sufficient.

2. SAME—*when contract to make will is based on sufficient consideration.* Consent by residuary legatees to an order on the trustees and executors to pay the widow a large sum of money out of the residuary estate to which she was otherwise not entitled, is sufficient consideration for her agreement to make a will making an equal division of her property among them, she having previously threatened to disinherit certain of them, who for that reason refused to consent to the order until the agreement was made.

3. GIFTS—*when gift must be regarded as testamentary though not so in form.* A gift of property must be regarded as testamentary in character, though not so in form, where its purpose is to defraud parties to whom the donor had previously willed the property in accordance with an agreement based on sufficient consideration.

4. STATUTE OF FRAUDS—*contract to will personal property need not be in writing.* A contract to make a will in a particular manner need not be in writing to be capable of enforcement as against the Statute of Frauds, where all the estate of the promisor when the agreement was made, and at her death, was in personal property.

5. SAME—*when contract is manifested in writing.* An agreement to make a will is manifested in writing where the consideration therefor consists of a written order for the payment of money, signed by the promisees and delivered to the promisor, who in return executed a will in accordance with the agreement and delivered the same to her trustee, although she afterwards obtained possession of the will and destroyed it.

*Whiton v. Whiton,* 76 Ill. App. 553, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

This was a bill in equity brought in the circuit court of Cook county on February 10, 1897, by Lander Kirke Whiton and Walter Starr Whiton, against their sister, Louise Whiton.  The bill alleges that complainants are the children of Henry K. Whiton, deceased, who died July 14, 1886, leaving complainants, Vernon Conger Whiton, and defendant, Louise Whiton, children by his wife, Louise L. Whiton, and Arthur L. Whiton, a child by a former wife; that Vernon Conger Whiton died about May, 1890, unmarried and intestate; that Henry K. Whiton, their father, died leaving a last will and testament, the following being the substance of the material parts necessary to be considered in the decision of this case, to-wit:

*First*—Gives to his wife, Louise L., all his household effects of every sort, including articles of apparel and ornaments and books (excepting law library); also such bank stock as he shall own in the Commercial Bank of Chicago at the time of his decease; also, proceeds of all life insurance upon his life which he may own at the time of his decease, except a policy of $2000 in the Equitable of New York, which was taken for the benefit of his daughter.

*Fourth*—Gives to his daughter, Louise, the proceeds of the policy of insurance on his life in the Equitable for $2000, in which she is named as the beneficiary,—to be in addition to her share of the estate as hereinafter divided.

*Fifth*—"Subject to the foregoing, I give, devise and bequeath to my executors hereinafter named, or to such of them as shall qualify as such, or to any administrator with this will annexed, all the rest and residue of my estate, real and personal and wheresoever situated, to enter into and possess the same and take the rents, issues and profits thereof, but upon the following trusts, to-wit: As soon as practicable, without apparent sacrifice, to sell, convey and convert into money all my real estate and unsecured claims and demands of every sort, and with the proceeds, after satisfying the legacies aforesaid,

179—3

debts and expenses of administration, to make such investment in interest-bearing securities as my executors or the administrators with the will annexed may deem most desirable and be sanctioned by the probate judge of Cook county, Illinois, for the time being, giving, however, a preference to first mortgage loans and improved real estate. And I desire that the income from such property, and the securities into which it may be converted, as well as the dividends or income from any portion of my estate not hereinbefore specifically devised or bequeathed, may all be paid over to my said wife to be her own property, but to be used for her support and the support and education of her children."

*Sixth*—That when any of the children of his present wife should attain the age of twenty-one there should be advanced to him or her the sum of $2000, to be charged against his or her distributive share of the testator's estate, and when the oldest surviving child by the present wife shall attain the age of twenty-five, the residue of the estate shall be divided into as many equal parts as the testator shall then have children surviving by his present wife, and that one of said parts shall be paid over to the child who has reached the age of twenty-five, and as soon as any other child shall attain the age of twenty-five a like share should be paid over to him or her, with any income that may have accrued to such share after the division of such estate.

The bill alleges that the said will was admitted to probate by the probate judge of Cook county on the 5th day of August, 1886, and letters testamentary were issued thereon to Samuel G. Bailey and Warren J. Durham, as executors and trustees; that on or about the 5th of August, 1886, said Bailey and Durham entered into possession of said property, and delivered to said Louise L. Whiton, widow of their testator, about eighty shares of the capital stock owned by the testator in the Commercial National Bank of Chicago in his lifetime and twenty

shares of stock of said bank in addition, which had been nominally given to said Louise L. Whiton, altogether of the par value of $10,000, and other securities; that the total amount paid over to said Louise L. Whiton by said executors out of the estate was the sum of $43,389.70 prior to the month of June, 1895, computing such securities at actual value; that a few weeks prior to the 6th day of June, 1895, their said mother, Louise L. Whiton, having recently returned from a visit abroad, stated to complainants that she wanted some more money out of the estate of her husband, said Henry K. Whiton; that she wanted $12,000, but that said Bailey and Durham, being such executors and trustees, would not pay her any more money without the authority and consent of complainants and of defendant, claiming that she, the said Louise L. Whiton, had received all she was entitled to out of said estate; that she had a power of attorney from her daughter, said defendant, authorizing her, the said Louise L., to do in the matter whatever she, said Louise L., thought proper and right, and stated that if complainants would consent to an order in a certain case then pending in the circuit court of Cook county, Illinois, wherein complainant Lander Kirke Whiton was plaintiff and said Bailey and Durham and others were defendants, on the chancery side of said court, she could get the money, or the securities representing the money, out of the hands of said Bailey and Durham, as such executors and trustees; that she further stated to complainant Walter Starr Whiton that if he would consent to said order authorizing the payment to her of the said $12,000 by said Bailey and Durham she would make it all right with him in her will; that complainant Lander Kirke declined to consent to the entry of such order, or to give his authority to the payment by said Bailey and Durham, as such executors and trustees, of said sum of $12,000, or any other amount, for the reason, as stated by complainant Lander Kirke to said Louise L. Whiton, that she had theretofore threatened

complainant that she would in her will disinherit him, and that he, said Lander Kirke, felt that such statement and such attitude on the part of his mother were unjust to him, and that he was satisfied that she had received from said estate more than she was entitled to receive therefrom in accordance with said will and the existing condition of said estate; that thereupon said Louise L. stated to complainants that she had no such disposition to disinherit them, and in a conference then and there had, about the 28th day of May, 1895, it was proposed to the said Louise L. that she make a will devising and bequeathing all the estate of which she might die possessed to her three children, viz., complainants and defendant, equally one-third, share and share alike; that then and there it was agreed by and between complainants and the said Louise L. Whiton that complainants would each consent to the entry of such order, as aforesaid, in said cause then pending in said circuit court, authorizing and directing said Bailey and Durham, as such executors, to pay over to said Louise L. $12,000 in securities and money, and upon condition that she should make, execute and deliver her will devising and bequeathing all of the property of which she might die possessed to complainants and defendant, equally, share and share alike; that on the 5th day of June, 1895, in pursuance of said agreement last mentioned, said Louise L. Whiton made, executed, delivered and published her last will and testament, which was then and there witnessed by two subscribing witnesses and duly executed; that the will, after providing for the payment of debts and revoking former will, contained the following:

"*Third*—I hereby will, give, devise and bequeath all my estate, both real, personal and mixed, unto my three beloved children, and to the survivor or survivors of them, namely, Lander Kirke Whiton, Walter Starr Whiton and Louise Whiton, in equal parts, share and share alike, the share or portion hereby devised to my beloved

daughter, Louise Whiton, to be free from all control, debts, judgments, demands or liabilities of any husband that she may hereafter have.

"*Lastly*—I do hereby nominate and appoint the Northern Trust Company   *   *   *   to be my sole executor under this my last will and testament."

The bill further alleges that thereupon complainants and said Louise L., for herself and as attorney in fact for said defendant, together with the solicitor of said defendant, consented in writing to the entry of an order directing said Bailey and Durham, as such executors and trustees, to forthwith pay to said Louise L. the sum of $12,000 in cash, or cash and securities, of said estate in their hands as such trustees, which said order was on the 6th day of June, 1895, entered by said circuit court in said cause; that about the time of the entry of said order said last will and testament of said Louise L. was by her delivered to the Northern Trust Company, named in said will as executor; that said trust company was and is a corporation under the laws of the State of Illinois, with power to accept trusts as executor of wills; that some little time after the said 6th day of June, 1895, said Bailey and Durham, as such executors and trustees, in pursuance of said agreement between complainants, defendant and said Louise L., and in conformity to said order of court, paid and delivered to said Louise L., out of the assets of said estate, money and securities amounting to and of the value of $12,000; that on or about December 27, 1896, the said Louise L. departed this life; that prior to her decease, and on or about November 21, 1895, she, without the knowledge or consent of the complainants, and contrary to the arrangement theretofore had between them and her, made, executed, declared and published another will and testament, in and by which, among other things, she bequeathed to complainants and to Arthur L. Whiton the sum of $1000 each, all the rest and residue of her estate, amounting to the sum of up-

wards of $40,000 of actual value, she bequeathed to the said Louise Whiton, the defendant; that knowledge of the last mentioned will first came to complainants after the death of said Louise L. Whiton; that Walter Starr Whiton avers that since the death of the said Louise L. said defendant has informed him that during the time she and the mother were in Vienna, Austria, and in the year 1896, the said Louise L., before the United States consul at Vienna, gave and transferred to defendant all the estate of her, the said Louise L., of every kind and nature, being various notes, mortgages and securities, specified in this bill of the value of upwards of $40,000; that with the exception of twenty shares of bank stock every dollar of said securities was received from the estate of said Henry K. Whiton, deceased, by said Louise L., in her lifetime; that she received in all from said estate, in money and securities, an actual value of upwards of $60,000; that said estate has been settled and closed and said Bailey and Durham discharged as such executors and trustees, and the property of said estate divided among complainants and defendant; that the actual amount received in money and property by complainants and defendant has been the total sum of $24,360.92 each, as appears by the records of the circuit court in said cause; that some time after the 5th day of June, 1895, (the precise date not being known to complainants,) said Louise L., without the knowledge or consent of complainants or either of them, took her said will of the 5th of June, 1895, away from said Northern Trust Company, where she had deposited the same in accordance with the said agreement between her and complainants and said defendant, and that the said will is no longer in the custody of said Northern Trust Company, and neither of complainants knows where it is or whether it is destroyed or not, but they charge that the same has been lost or destroyed; "that it was the evident intention on the part of the said Louise L. Whiton, in her lifetime, to violate her agree-

ment made with your orators on or about the 5th day of June, 1895, first in the execution of her said will subsequently made on the 21st day of November, 1895, then afterwards by making a gift, in her lifétime, of all her said property to said Louise Whiton;" that the delivery and transfer by said Louise L. to said defendant of said promissory notes, mortgages and bank stock were a pure gift made by said Louise L. to said defendant, without any consideration moving from the latter to the former except natural love and affection, which complainants charge were not and are not sufficient in law to support said gift to said defendant as against said agreement between complainants and Louise L. and the said last will of the 5th of June, 1895; that on the day when complainants, in consideration of said Louise L. making her said will, agreed that she should be paid the sum of $12,000 by said Bailey and Durham out of said estate, there was nothing due to her from said estate, but, on the contrary, she had overdrawn largely in excess of the amount due her under the provisions of said will of Henry K. Whiton, deceased.

The bill prayed for answer not under oath and for an account of said property given to defendant by said Louise L. Whiton as such gift; that a decree may be entered by the court, on the hearing, finding and directing that complainants and defendant are each entitled to one-third of said property so received by defendant as such gift; that said agreement of the 5th of June, as evidenced by the said will of Louise L., may be specifically performed and enforced, etc.

Defendant, Louise Whiton, filed an answer to the bill admitting that, subject to certain specific legacies, the will provided for the residuary estate of the testator, and that such residuary estate was devised to Bailey and Durham as executors and trustees, as provided in the fifth clause of the will, averring that Louise L. Whiton insisted upon receiving more than $12,000; that the executors insisted that if any further payment was made to

her by them it would have to be made with the consent
of all parties interested in said estate and pursuant to
an order of court; that complainants entered into nego-
tiations for a settlement of all the then interests of said
Louise L. Whiton in said estate, and it was agreed that
the trustees should pay, under an order of court, the
$12,000, and said Louise L. Whiton should release unto
complainants and defendant all further interest in said
estate; denies that the consent to the order was a con-
sideration for an agreement by Mrs. Whiton to dispose
of her property by will, as stated in the bill; denies the
allegation in the bill that on the 5th day of June, 1895,
in pursuance of said agreement, said Louise L. made the
will set forth in the bill; admits that on or about the
12th day of October, 1896, while the said Louise L. Whiton
and the defendant were sojourning together at Vienna,
Austria, the said Louise L. transferred, assigned and de-
livered to the defendant all the property and estate of
said Louise L., and claiming that all of said property
became the property of defendant and is her absolute
and exclusive property. The answer also sets up a last
will and testament of said Louise L. Whiton, dated No-
vember 21, 1895, in which she devises and bequeaths to
complainants and Arthur L. Whiton $1000 each, and all
the residue and remainder of her estate to the defendant.
It also sets up a writing relating thereto, signed by com-
plainants and defendant, stating that as Louise L. Whiton
had disposed of all her estate and effects after November
21, 1895, it was thought unnecessary to have any cost or
expense incurred in reference to probating the same.

An amendment to the answer was made, setting up
that the contract set out in the bill of complaint was not
an agreement to be performed within the space of one
year from the making thereof and was not manifested by
any writing signed by the said Louise L. Whiton. A rep-
lication was filed to the answer. Evidence was heard by
the circuit court, and upon a final hearing the bill was

dismissed for want of equity. An appeal was taken to the Appellate Court for the First District, which reversed the decree of the circuit court and remanded the cause to the circuit court for further proceedings consistent with the decision of the Appellate Court. A decree was entered by the circuit court, the material parts of which are, in substance, as follows: That the evidence in the cause supported the allegations in complainants' bill of complaint; that the complainants made and entered into a distinct and definite agreement with their mother, Louise L. Whiton, by which she agreed to leave her estate, at her death, to complainants and defendant, equally, share and share alike, for a good and valuable consideration furnished by said complainants to said Louise L. Whiton and by her received; that on or about the 2d day of August, 1895, the said Louise L. Whiton, without the knowledge or consent of said complainants, secured possession of her last will and testament of the 5th of June, 1895, from the Northern Trust Company, and that said will has not since been found or come to the knowledge of complainants; that the said Louise L., on or about the 21st day of November, 1895, without the knowledge or consent of complainants, made, executed, delivered and published a certain other will, in and by which, among other things, she attempted to revoke all wills by her theretofore made, including her said will of June 5, 1895, and in and by which she devised to her step-son, Arthur L. Whiton, and to her sons, the sum of $1000 each, and bequeathed all the rest, residue and remainder of her estate to her daughter, the defendant; that thereafter, on the 12th day of October, 1896, at the city of Vienna, she gave to said defendant all her estate of every kind, and that said gift was without consideration save natural love and affection, and was made for the purpose of defeating the agreement made between the said Louise L. and her said sons, the complainants, on or about June 5, 1895, and that said gift was testamentary in character;

that from the 12th day of October, 1896, when said gift was made, the said Louise L. was supported by said defendant; that the complainants, on the happening of the death of the said Louise L. Whiton, each became and are now entitled to one-third of the property mentioned; that said gift constituted a fraud upon said agreement between complainants and said Louise L. Whiton, in pursuance of which she made, executed, declared and published her will of June 5, 1895, and received the sum of $12,000 from the estate of Henry K. Whiton. The decree finds complainants are entitled to a specific performance of said agreement, and that defendant received all said property and estate charged with a trust in favor of said complainants to the amount of two-thirds thereof, etc.

From this decree of the circuit court appellant, Louise Whiton, sued out a writ of error from the Appellate Court, and the evidence being the same in the second record as it was in the first, the Appellate Court affirmed the judgment of the circuit court. Appellant sues out a writ of error from this court and asks for the reversal of the judgment of the Appellate Court.

JOHN M. GARTSIDE, and PENCE, CARPENTER & HIGH, for plaintiff in error:

A parol contract to leave a person a child's share, or to leave one any particular part of that of which the covenantor shall die seized or possessed, is against the spirit and letter of the Statute of Wills, which statute requires that such testamentary instrument must be in writing, signed by the donor and by two credible witnesses. *Drennan* v. *Douglas*, 102 Ill 341; *Shearer* v. *Weaver*, 56 Iowa, 578; *Wallace* v. *Rappleye*, 103 Ill. 256.

Such parol contract is obnoxious to the Statute of Frauds, as it includes or might include real estate. *Pond* v. *Sheehan*, 132 Ill. 312; *Meyers* v. *Schemp*, 67 id. 469; *Dicken* v. *McKinley*, 163 id. 318; *Thayer* v. *Rock*, 13 Wend. 53; *Sloniger* v. *Sloniger*, 161 Ill. 270.

A will, much less an agreement for a will, cannot create a trust upon the property to which it relates.   But if we assume that a trust was so created, still it would be obnoxious to the principle of trusts, which provides that a court will not execute the same where there is uncertainty as to the subject matter of the trust attempted to be asserted.   *Austin* v. *Davis*, 128 Ind. 472; Hill on Trustees, 74; 1 Lewin on Trusts, 134; 1 Perry on Trusts, sec. 116; 2 Story's Eq. Jur. sec. 1670, and note; 1 Jarman on Wills, (Bigelow's ed.) 357; *Cowman* v. *Harrison*, 10 Hare, 234; *Parnall* v. *Parnall*, L. R. 9 Ch. Div. 96; *Mills* v. *Newberry*, 112 Ill. 123; *Coulson* v. *Alpaugh*, 163 id. 298; *Williams* v. *Worthington*, 49 Md. 572.

JOHN S. COOPER, for defendants in error:

The agreement to make the will, and the will made in pursuance thereof, were upon a valuable consideration, and were binding upon Mrs. Whiton in her lifetime and at her death upon plaintiff in error, who gave nothing for the property in controversy.   The gift was a fraud upon that agreement, and was in its nature testamentary. *Padfield* v. *Padfield*, 72 Ill. 322; *Wallace* v. *Rappleye*, 103 id. 269; *Johnson* v. *Hubbell*, 10 N. J. Eq. 332; *Vanduyne* v. *Vreeland*, 12 id. 142; *Carmichael* v. *Carmichael*, 72 Mich. 76; *Parsell* v. *Stryker*, 41 N. Y. 480; *Gupton* v. *Gupton*, 47 Mo. 37; *Wright* v. *Tinsley*, 30 id. 389; *Hiatt* v. *Williams*, 72 id. 214; *Hogan* v. *Weinholt*, 7 Bligh, 1; *Randall* v. *Willis*, 5 Ves. 266; *Jones* v. *Martin*, 8 Brown's Cas. in Parl. 242; *Lewis* v. *Maddox*, 8 Ves. 150; *Perdue* v. *Jackson*, 1 Russ. Ch. 1; *Chilliner* v. *Chilliner*, 2 Ves. Sr. 527; *Fortesque* v. *Hennah*, 19 Ves. Jr. 67; *Willis* v. *Black*, 4 Russ. Ch. 171; *Durour* v. *Perraro*, 2 Hargrave's Jur. Arg. 272; *Gregor* v. *Kemp*, 3 Swanst. 404; *Brinker* v. *Brinker*, 7 Pa. St. 53.

The agreement was sufficiently certain and contained the other requisites to entitle defendants in error to its specific performance.   *Johnson* v. *Hubbell*, 10 N. J. Eq. 332; 3 Pomeroy's Eq. Jur. sec. 1404, note 1; *Carmichael* v. *Car-*

*michael,* 72 Mich. 76; *Vanduyne* v. *Vreeland,* 12 N. J. Eq. 132; *Wright* v. *Tinsley,* 30 Mo. 389; *Logan* v. *Weinholt,* 7 Bligh, 1; *Gregor* v. *Kemp,* 3 Swanst. 404; *Fortesque* v. *Hennah,* 19 Ves. Jr. 67.

The agreement, with the will made in pursuance thereof, is not obnoxious to the Statute of Frauds. *Swanzey* v. *Moore,* 22 Ill. 63; *Worrell* v. *Forsyth,* 141 id. 22; *McPherson* v. *Cox,* 96 U. S. 404; *White* v. *Maitland,* 71 Ill. 250; *Walker* v. *Johnson,* 96 U. S. 424; *Brinker* v. *Brinker,* 7 Pa. St. 53; *Davison* v. *Davison,* 2 Beas. 246.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The first question for consideration is, whether the agreement set out in the bill of complaint, between Lander Kirke Whiton and Walter Starr Whiton, the complainants, and their mother, Louise L. Whiton, is sufficiently certain and definite to be enforced in a court of equity. The agreement set up in the bill is, in substance, that Louise L. Whiton, the widow of Henry K. Whiton, having received more than she was entitled to receive in accordance with the will of her husband and the condition of the estate, desired the executors and trustees of the estate to pay her $12,000 more, which they refused to do unless the complainants, her two sons, and her daughter, the defendant, would consent that an order on the trustees to that effect be entered in a certain case then pending in the circuit court of Cook county, wherein the said Lander Kirke Whiton was complainant and Bailey and Durham, the trustees, and others, were defendants; that Mrs. Whiton stated to complainant Walter Starr Whiton that if he would consent to the payment to her of $12,000 by said trustees she would make it all right with said Walter Starr Whiton in her will; that complainant Lander Kirke Whiton declined to consent to the entry of such order, or to give his authority for the payment of $12,000 to her, or any amount, because, as he stated to her, she had before that time threatened him that she would dis-

inherit him in her will, and that he was satisfied she had received from the estate more than she was entitled to receive in accordance with the will and the condition of the estate; that thereupon said Louise L. stated to said complainants that she had no disposition to disinherit them, and in a conference had shortly thereafter between complainants and their mother, in the office of one of the attorneys, it was proposed to the said Louise L. that she make a will devising and bequeathing all the estate of which she might die possessed to her three children, viz., complainants and defendant, equally one-third, share and share alike; that then and there it was agreed by and between complainants and said Louise L. Whiton that complainants would each of them consent to the entry of such order, as aforesaid, in said cause then pending in the said circuit court, authorizing and directing said Bailey and Durham, as such executors, to pay over to said Louise L. $12,000 in securities and money, and upon condition that she should make, execute and deliver her will devising and bequeathing all of the property of which she might die possessed to complainants and defendant, equally, share and share alike; that on the 5th day of June, 1895, in pursuance of the said agreement last mentioned, said Louise L. Whiton made, executed, delivered and published her last will and testament, which was then and there witnessed by two subscribing witnesses, a copy of which said will was set out in the bill. It was also set out as a part of the contract that it was agreed that the attorney should deposit said will with the Northern Trust Company of Chicago, which he afterwards did; that the order of court was entered the following day, and Mrs. Whiton was afterwards paid the sum of $12,000 in money and securities from the estate; that the will was deposited with the Northern Trust Company by John J. Knickerbocker, as had been agreed.

The testimony of John J. Knickerbocker, who prepared the will and was present when it was executed and

when the agreement was made, stands uncontradicted, and clearly establishes the making of the agreement set out in the bill. He testified that Louise L. Whiton came to his office seeking a solicitor; that he examined certain files and papers for her in the estate of Henry K. Whiton, and attended to the business of the trustees, Bailey and Durham, on different occasions; that he had many interviews with Mrs. Whiton at his office; that the acts and services performed were in the course of and as part of his employment as her solicitor; that he spent a great many hours in interviews with Mrs. Whiton; that he dictated the will of Mrs. Whiton and drafted the same. He was then asked: "Were you present at any interview between Louise L. Whiton and the complainants with reference to the matter of Mrs. Whiton obtaining some additional money from the trustees of the estate of her husband?" and answered: "I was on one occasion, at my office; yes, more than twice. The first interview was some time in June or late in May, 1895. There were present at some of the interviews her sons and yourself. Her son Starr was at all the interviews. At the interview in my office Mrs. Whiton said to the complainants she wanted more money from the trustees of the estate of Henry K. Whiton. She said she wanted Starr, one of her sons, to help her get money from the trustees. Starr Whiton said he wanted to see Kirke, his brother. Mrs. Whiton asked Starr to go and see his brother, and bring his brother, Kirke, to see his mother. Subsequently, and on the same day and a short time afterwards, when Starr was there with Kirke and their mother, she said to both of them that she wanted their aid—their consent—to take more money out of the hands of the trustees. That is the substance of what was said in this interview. On consultation they refused. They said they would not do it. They refused to do it, and thereupon our friend here, Col. Cooper,—I am not able to reproduce his exact language,—he said some very harsh things to Kirke, and

Kirke left the office and the interview ceased and the boys both went away. That is the first conversation—at the first interview—at which they were all present. There were two interviews between myself, Mrs. Whiton and Starr Whiton and Mr. Cooper." Witness was then asked to state the next conversation when the mother and the two sons and witness were present, and said: "I have no recollection of Kirke Whiton coming to my office again for several days, but the succeeding day and the day after it,—indeed, for a period of about ten days or more,—Mrs. Whiton, without exception, was at my office every day except on Sunday, and nearly every day that she was there she had Starr there. I remember one conversation in which she said to him that he was her boy and he ought to do what she asked him to do, and it was his duty to do it. The next conversation at which they were all present was in the office of Col. Cooper. We were assembled at Col. Cooper's office, and there were there, the Colonel, Mrs. Whiton, the two boys, Starr and Kirke, and myself, and I had dictated this will for her. The first that her attention was called to it was, I called them all in the room and the will was dictated and written, and I told her that she wanted—

The court: "In their presence?

A. "Yes.

Q. "Was the will dictated in their presence?

A. "No, the will was dictated in the Colonel's private room. There was nobody but Miss Burnham, the stenographer, and myself; and I told Mrs. Whiton that there was trouble between her and her sons, and she wanted to know what it was. She asked me what it was. I said to her that they said that she had threatened their disinheritance.

The court: "This occurred in their presence, you say, and hearing?

A. "In their presence and hearing. They were both there. She said, 'Well,' she said, 'I didn't mean that.'

The court: "Did not what?

A. "She says: 'Well, I did not mean that.' And Kirke says: 'Well, mother, you know you said it, and Starr and myself have not felt very well about it since.' And Mrs. Whiton said: 'Well, then, you are going to refuse to let me have any more money from the trustees?' And Kirke says: 'We have not said that yet, mother, but we don't like what you said about us and our father's estate, and we should want to know that that would not happen.'

Mr. Cooper: "What would not happen?

A. "The disinheritance—that was what we were talking about; and Mrs. Whiton asked me how that could be fixed,—how it could be arranged,—and I told her, in the presence of the boys, what I had told them in a conversation with them at Kirke's office before this interview the same day and at Col. Cooper's, and I repeated the conversation in their presence and hearing of what I had said to the boys and what the boys had said to me. I said to her: 'Mrs. Whiton, I have told these boys that I do not think that you contemplate anything of that kind or that you contemplate their disinheritance. I told them that I was so sure of it that I felt satisfied that if they would come over here and consent to an order for your taking a certain amount out of the estate,—such an amount out of the estate, by order of court, as you ask for,—that you would put it in such a way that they could not be disinherited,—that you would make your will and give them their share when you died.' Mrs. Whiton said to me, in their presence—

The court: "She replied in their presence?

A. "Yes, she replied in their presence: 'I like that, Mr. Knickerbocker, of your saying how I shall will my property or tell me what I shall do with it.' I told her I did not purpose to do that—I had no right to do it, but that it was a family affair. They were all agreed that they wanted to close the estate. They wanted to get it out of the hands of the trustees to save expenses, and

that if they were a united family it did not seem to me there was much difference who held the property and the boys would feel better about it. They would be entirely satisfied and contented to let her take what she asked for—the $12,000—provided she would make her will and divide it in equal parts between the brothers and the sister,—the three children. 'Now,' I says, 'because I have drafted this will and it is here you do not have to execute it; but this trouble is with your children, and it may be the shortest way to get peace in the family and to get what you want, if you intend that they shall have that share in your estate.' Well, she said she liked that. She supposed she better do it, as she wanted to get money or securities, and she did do it.

Mr. Cooper: "Did what?

A. "Signed the will.

The court: "Right there in their presence?

A. "Yes, sir, and in the presence of some other people,—Mr. Cooper, myself, Mr. Lancaster, Miss Burnham, the stenographer, and I think John A. Henry was there. That done,—I think it was late in the afternoon,—that done, concluded the exercises of that day, excepting some things Mrs. Whiton said."

The witness was shown the order entered on the 6th of June in the chancery case No. 116,473, and said to complainants' counsel: "That was dictated in your office. I think you did it on the day and date on which the will was prepared.

Q. "At the time the will was prepared and executed?

A. "Yes, sir; that was part of the transaction."

The order was introduced in evidence. The witness said the signatures were made as certified; does not remember whether document was made before·or after the execution of Mrs. Whiton's will, but it was made at· the same time.

Q. "I will ask you whether there was any conversation between the parties there present when the will was

executed,—I mean between Mrs. Whiton and the complainants,—as to what should be done with the will?

A. "That it be delivered by me to the Northern Trust Company."

Witness was asked what, if anything, he did with the will pursuant to instructions received from complainants and their mother, and said: "I put it in my vault and afterwards delivered it to the Northern Trust Company.

Q. "You delivered it personally?

A. "Personally, myself. The will was enclosed in an envelope. It was an executed will, sealed up, and the name of the testatrix was written across the envelope at right angles."

The original will being lost or destroyed, a copy from the stenographer's notes was introduced in evidence, and proof of the execution by Mrs. Louise L. Whiton of the original will was made by E. G. Lancaster and J. J. Knickerbocker, the two subscribing witnesses, and by Miss Burnham, the stenographer, who took a dictation from Mr. Knickerbocker of the will for Mrs. Whiton and wrote it out for him and made the copy from the original notes, and who saw Mrs. Whiton sign the will. This leaves no doubt as to the execution of the will, and that the will devised all of Mrs. Whiton's estate to the complainants and the defendant, Louise Whiton, in equal parts, share and share alike. The foregoing testimony and the will establish the making of the agreement set out in the bill by positive and clear evidence, and the evidence makes a case which a court of equity may properly enforce.

*Second*—Is an agreement based upon a valuable consideration to make a particular disposition of property by will binding upon the person making it? In Parsons on Contracts (vol. 3, p. 407,) it is said: "It is obvious that an agreement to make a certain disposition of property by last will is one which, strictly speaking, is not capable of a specific execution,—not in the party's lifetime,—

because any testamentary instrument is by its nature revocable, and after his death it is no longer possible to make his last will. Yet it has been held to be within the jurisdiction of equity to do what is equivalent to a specific performance of such an agreement by requiring those upon whom the legal title has descended to convey the property in accordance with its terms, and the court will not allow this *post mortem* remedy to be defeated by any devise or conveyance in the lifetime inconsistent with the agreement, unless, indeed, rights of purchasers deserving of protection should intervene. But if one contracts to devise, and during his life conveys the land away, equity sometimes requires his representatives to make full compensation. As a general rule it may be said that where a specific performance would be decreed as between original parties to a contract it will be decreed as between all who claim under them, unless intervening equities would make the decree operate injustice towards these parties." See, also, *Fortescue* v. *Hennah*, 19 Ves. Jr. 67; *Gregor* v. *Kemp*, 3 Swanst. 404; *Jones* v. *Martin*, 5 Ves. 265; *Randall* v. *Willis*, 5 id. 262; *Logan* v. *Weinholt*, 7 Bligh, 57; *Johnson* v. *Hubbell*, 10 N. J. Eq. 332; *VanDuyne* v. *Vreeland*, 12 id. 142; *Parsell* v. *Stryker*, 41 N. Y. 480.

*Johnson* v. *Hubbell*, 10 N. J. Eq. (2 Stockton,) 332, where a bill was filed to enforce the specific performance of an agreement to make a will, is an interesting case and one in point here. In the decision of the case it is among other things said: "There can be no doubt but that a person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his own property at his pleasure, and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual or for a particular purpose as well by will as by a conveyance to be made at some specified future period or upon the happening of some future event. It may be unwise

for a man in this way to embarrass himself as to the final disposition of his property, but he is the disposer, by law, of his own fortune, and the sole and best judge as to the time and manner of disposing of it. A court of equity will decree the specific performance of such an agreement upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction. In the case of *Rivers* v. *Executors of Rivers*, 3 Dessaus. 195, the court, in sustaining the propriety of a court of equity's recognizing and enforcing such an agreement, very properly remarked that a man might renounce every power, benefit or right which the laws give him and he will be bound by his agreement to do so, provided the agreement be entered into fairly, without surprise, imposition or fraud, and that it be reasonable and moral. * * * This agreement, then, made between the complainant and his father was a legal agreement, and this court should decree its execution, if, in the exercise of its legal discretion, it can do it without violating any principle of equity or doing injustice to any third party who may be innocently involved in the transaction. Generally, the agreement may be enforced without any embarrassment. If A enters into an agreement, for which he receives a good consideration, with B, to give him his property by will, and in violation of his agreement he gives it by his will to C, the court will declare C a trustee for B. In doing this it does C no wrong. A having undertaken to make C a voluntary gift of that which he had no right, in law, so to dispose of, the court does C no injustice, and violates none of his rights by declaring him a mere trustee. To permit C to hold the property as against B, the court would sanction the fraud which A had committed in disposing of the property in violation of his agreement. The fraud of the father was in not making his will and dividing his estate between his children. It does not divest the breach or non-fulfillment of the contract of its fraudulent character because the fraud was not medi-

tated at the time the agreement was made. The fraud of the daughter consists in retaining her brother's land without consideration, which is against good conscience. It is to protect the complainant against this fraud that this mode of relief is proper. That Mrs. Hubbell made no agreement or promise with her brother that she would be responsible that the contract should be carried out does not make it the less unconscionable that she should hold her brother's land, conveyed to her under a family compact made for their mutual benefit, which has failed of execution through default of neither of them but of a third party. She accepted the land under the family arrangement; that arrangement has fallen through. The position of the complainant is of some consideration with the court. He was one of the heirs-at-law of Robert G. Johnson. He is not only a sufferer by the father's violation of the agreement but without cause has been disinherited, and that which in law and justice belonged to him by his double right as heir and by contract, is all, or nearly all, bestowed upon his sister and her children. Under such circumstances to permit the sister to enjoy, without any consideration, a part of that inheritance which the complainant derived from his mother is unjust, and a court of equity ought to prevent it." The court, on account of the rights in the property of innocent third parties other than the sister, held that it could not decree a specific performance of the father's agreement, but that the son was entitled to a decree against his sister for the part of their mother's estate conveyed by the son to his sister. *VanDuyne* v. *Vreeland*, 12 N. J. Eq. 142; *Gupton* v. *Gupton*, 47 Mo. 37; *Wright* v. *Tinsley*, 30 id. 389; *Parsell* v. *Stryker*, 41 N. Y. 480; *Carmichael* v. *Carmichael*, 72 Mich. 76.

In *Dicken* v. *McKinley*, 163 Ill. 318, this court, while holding, under the evidence in that particular case, that the contract could not be enforced because of the Statute of Frauds, recognized the principle involved in the case at bar,—that a person may make a valid agreement to

dispose of his property by will,—in these words (p. 322): "The weight of authority is in favor of the position that a man may make a valid agreement to dispose of his property in a particular way by will, and that such contract may be enforced in equity, after his decease, against his heirs, devisees or personal representatives.—22 Am. & Eng. Ency. of Law, p. 974, and cases cited in note 2; Schouler on Wills,—2d ed.—sec. 454; Waterman on Specific Per. of Contracts, sec. 41; Fry on Specific Per.— 3d ed.—sec. 223; *Weingaertner* v. *Pabst,* 115 Ill. 412."

The agreement between the complainants and their mother, Louise L. Whiton, being for a valuable consideration moving from the complainants to her, and the will being executed, was binding upon her.

The contention of plaintiff in error that the $12,000 allowed by the court was due to Mrs. Whiton from the estate is not sustained by the evidence. She had received more than her share of the estate under the provisions of the will, and the trustees refused to pay her any more without an order of the circuit court and the consent of the complainants and the defendant thereto. Had she been entitled to the $12,000 by virtue of the terms of the will she would hardly have importuned the trustees to let her have that amount, neither would she have asked complainants' consent to the court order, but her attorney would have compelled the trustees to pay what was actually due her. No evidence was introduced to show that she was entitled to the amount claimed on the trial. An examination of the record shows that Mrs. Whiton was not entitled to receive the $12,000 from the estate, but that she received $8000 of complainants in consideraation of the agreement to execute the will which was executed and deposited with the Northern Trust Company.

*Third*—The gift of Mrs. Whiton to her daughter, the defendant, was made in fraud of the rights of complainants, and cannot be regarded as an absolute disposition of her property, but was testamentary in character. An

examination of the evidence impresses us that it was the
intention of Mrs. Whiton by this attempted gift to pre-
vent her estate becoming subject to this agreement be-
tween herself and the complainants and was intended to
defeat it.   It was a fraud on complainants, and must be
regarded as testamentary for the purpose of defeating
the fraud.  In *Logan* v. *Weinholt*, 7 Bligh, 57, the lord chan-
cellor, after quoting from *Jones* v. *Martin*, 8 Brown's Cas.
242, says: "His honor here lays down the principle to
which I have adverted, that if, in substance and effect,
the conveyance defeats or defrauds the obligation en-
tered into, and is done with that object, having that
tendency, producing that effect, though not in form tes-
tamentary, it is to be dealt with as if, in fact, it were
testamentary, for the purpose of protecting the right,
for the purpose of defeating the fraud, for the purpose
of securing to the party, under the agreement, the right
to that part of the estate to which he is entitled."   The
authorities seem to hold that any disposition of property
subject to such an agreement, made by a person during
life for the purpose of effecting a testamentary disposal
of the same, cannot defeat the agreement.

The case of *Gregor* v. *Kemp*, 3 Swanst. 404, where the
donor in her lifetime made a gift "out and out," without
any interest being retained therein, was similar to the
case at bar.   The facts were as follows:  Joan Kemp, on
the marriage of her eldest son with the plaintiff, entered
into a covenant, in consequence of the marriage of her
son, that she would, by her last will or otherwise, give,
grant or devise to her son, John Kemp, one-fourth part
of all the real and personal estate she should be seized
of or entitled to at the time of her death.   The marriage
took place and a daughter was born to the son and wife.
The plaintiff and both son and granddaughter being in
a bad state of health, the mother, Joan, often declared
her apprehension that neither of them would long survive
her and was afraid a large portion of her estate would

go into the hands of strangers. Accordingly, three days before her death the mother, Joan, made a gift to other relatives of £1000. The plaintiff filed a bill against such beneficiaries and their trustee to have an account taken of the estate of Joan Kemp and to secure for herself the full fourth part of the estate, insisting that the disposition was in fraud of the marriage articles. The defendants contended that Joan Kemp had the right to give her estate away. On page 406 the report reads: "The lord chancellor was of opinion that the disposition was in fraud of the articles. He agreed that, notwithstanding the articles, Mrs. Kemp was not restrained from disposing of her estate in any way in her lifetime and had a full power over it, but with this single exception, viz.: she was restrained from making a distribution on purpose to defeat the covenant, which it is here fully proved she did, for she was unwilling her estate should go to strangers, and the disposition is a plain fraud. It was the intent of the articles that it should be for strangers, for it is to him, his executors, etc.; therefore, if he should think proper to make his wife executrix, as he did, it was designed for her benefit. But supposing this disposition had not been with this avowed design to evade the articles, yet he should have thought it, as it is circumstanced, a *donatio mortis causa*, and not good, for otherwise articles of this nature will signify nothing if they are thus eluded by a disposition a day or two before death. And in this case she puts the greatest part of the money into the hands of the trustees named in her last will, so that it seems to have the air of a will. The plaintiff, therefore, must have the full fourth part of the estate after debts paid; but this disposition is good to affect the remaining three parts of her estate, and must be satisfied out of it to the several defendants."

Here the facts and circumstances of the entire transaction connected with this gift show that Louise L. Whiton deliberately planned to defeat the agreement with

her sons. She executed the will, and it was placed, by agreement, in the custody of the Northern Trust Company. She shortly afterwards withdrew it from the trust company without the knowledge of the complainants. She executed a second will November 21, 1895, in which she gave complainants each $1000, and all the rest, residue and remainder of her estate she bequeathed to her daughter, the defendant. Afterwards, while in Vienna, Austria, in October, 1896, she carried out what the daughter testifies was always her expressed intention to leave her property to her, and she gave to her daughter all her money and securities,—everything she had in the world. She retained nothing. They left Vienna the latter part of November and returned to Chicago, and her mother died the 27th of December. It was admitted no consideration was paid by the defendant, and from the time of this gift the daughter testifies she paid all the expenses of her mother. Mrs. Whiton was advanced in years and in a foreign country without any way of earning a living, and yet she gave away all her property, amounting to about $40,000, and became entirely dependent on the defendant. The latter says there is no evidence of an agreement between her mother and herself that she should maintain and support her mother. If there is no express agreement to that effect an implied contract to support her during life may be inferred from the facts and circumstances in evidence. It is apparent that the real object and design of transferring all her property was to defeat the agreement with complainants, and in view of the nature and character of the transfer, and the circumstances under which it was made, it was testamentary in character.

It is, however, claimed that the contract is within the Statute of Frauds, and hence cannot be enforced. There are several answers to this position. In the first place, no real estate was involved. The entire estate of Mrs. Whiton when the agreement was made and when she died consisted of personal property, notes, mortgages,

bonds and stocks. In the second place, the contract was manifested by a writing. The defendants in error agreed to give an order on the trustees for the payment to Mrs. Whiton of $12,000. This paper was signed by them and delivered to her. In consideration of the order Mrs. Whiton agreed to make a will devising her entire estate to defendants in error and her daughter. The will was prepared and executed by her in the presence of two or more witnesses. Thus the contract between the parties was reduced to writing and manifested by a writing. The fact that the will was subsequently destroyed does not affect the question under consideration. (*Keith* v. *Miller,* 174 Ill. 64.) We do not, therefore, think the Statute of Frauds can be relied upon to prevent the enforcement of the agreement. It is true that the matter of a specific performance of a contract, even when satisfactorily proven, is not always a matter of right in the party seeking specific performance but a matter of sound discretion in the court, which will grant or withhold relief according to the circumstances in each particular case. But here the judgment of the Appellate Court directing the circuit court to decree the execution of this contract in accordance with the prayer of the bill was fully warranted by the evidence introduced before the chancellor. The defendant still holds the securities, a portion of which are the identical securities transferred by the trustees to her mother, Louise L. Whiton, under the agreement sought to be enforced by complainants, and no injustice will be done, as the rights of innocent parties are not involved.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*