## Helen A. Lee, Appellee, v. Glendora S. Bermingham, Individually and as Administratrix of the Estate of Thomas C. Bermingham, Deceased, Appellant.

## Gen. No. 21,823.

1. EQUITY, § 379*—*what is effect of verdict in chancery proceeding*. A verdict in a chancery proceeding is merely advisory to the chancellor.

2. SPECIFIC PERFORMANCE—*when construction of contract of adoption for chancellor*. In a chancery proceeding to enforce an agreement to adopt a child and that she shall inherit the foster parents' property, the evidence having established such agreement, its construction, legal purport and effect are matters of law for the determination of the chancellor.

3. EQUITY—*how failure to file replication within statutory limit waived*. A party by participating in a trial in equity after his motion to strike from the record a replication as not having been filed within the statutory time is denied, waives such objection.

4. EQUITY—*when motion to strike replication not filed within statutory time addressed to discretion of chancellor*. In a chancery proceeding a motion to strike from the record a replication not filed within the statutory time is addressed to the sound discretion of the chancellor.

5. EQUITY—*when discretion of chancellor in denying motion to strike replication not filed within statutory limit not abused*. Denial of motion to strike from record a replication not filed within the statutory time, *held* not an abuse of the chancellor's discretion.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CXCIX 32

6. SPECIFIC PERFORMANCE, § 72*—*who are necessary parties to action for enforcement of contract of adoption and for distributive share in estate.* In a proceeding by a foster child for distribution of her share of the property of her intestate foster father under a contract of adoption, the father having died leaving personal property only, and no descendants, his widow, individually and as administratrix and the adopted child are the only necessary parties.

7. FRAUDS, STATUTE OF, § 118*—*when waived by failure to plead.* In equity a party to avail himself of the benefit of the Statute of Frauds must specially insist on it, and his failure to do so will be decreed a waiver.

8. SPECIFIC PERFORMANCE, § 92*—*when modification of instruction on degree of proof as to contract of adoption proper.* An instruction that a foster child must, in a suit for specific performance of a contract of adoption for distribution of property against the administratrix of her deceased foster parent, prove the contract of adoption relied upon by direct and positive evidence, *held* properly refused, and an instruction that such contract need be proved only by the preponderance of the evidence, *held* properly given.

9. ADOPTION—*what are rights of wife marrying subsequent to making of contract of adoption.* Where, subsequent to receiving into his home a child whom he has agreed to adopt, the foster parent marries, his wife's rights in his property are subject to the contract of adoption irrespective of whether she agreed to be bound thereby or not.

10. ADOPTION, § 3*—*when contract of construed as giving rights of child by marriage.* Contract of adoption construed as giving the foster child all the rights a legally adopted or child lawfully begotten in marriage would have had.

11. ADOPTION, § 3*—*what constitutes sufficient consideration for contract of.* It is a sufficient consideration to make a contract of adoption binding that the foster child left her parents and resided with her foster parents in accordance with the terms of the contract.

12. SPECIFIC PERFORMANCE, § 91*—*when evidence sufficient to establish oral contract of adoption and to warrant specific performance thereof.* Evidence examined and *held* sufficient to establish an oral contract of adoption, conferring on the foster child all the rights of a child begotten in lawful wedlock and to justify a decree for specific performance.

Appeal from the Superior Court of Cook county; the Hon. CHARLES A. McDONALD, Judge, presiding. Heard in this court at the March

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

term, 1916. Reversed and remanded with directions. Opinion filed May 29, 1916. *Certiorari* denied by Supreme Court (making opinion final).

GUERIN & BARRETT, for appellant.

EDGAR L. MASTERS, JOHN CASHMAN and MAYER, MEYER, AUSTRIAN & PLATT, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Much matter irrelevant to the controversy between the parties is injected into this record. It is of no consequence whether defendant resorted to ruse or wiles peculiar to her sex in inducing Thomas C. Bermingham to marry her, or what were her habits or those of Bermingham either before or after wedlock. The facts remain that they were married, that they were competent to contract a marriage when they did so, and that defendant is the widow of Thomas C. Bermingham. We shall therefore disregard these many irrelevant and, in some respects, scandalous matters, which have been projected into the record, and confine our decision to the questions and the points necessarily involved to construe the agreement set forth in complainant's bill and sought to be enforced by the decree rendered in the trial court.

Thomas C. Bermingham was twice married. He had issue by neither marriage and died intestate and without leaving descendants of his body. His kin, aside from complainant, are collateral. He made two wills before his marriage, neither of which could survive that event. An antenuptial contract resting in parol is averred. It was not proven and will therefore be disregarded in this opinion.

It appears that Thomas C. Bermingham, whose widow defendant is, had a twin sister, Anna Bermingham, who was the second wife of Edward Tully. This sister had one child, the complainant in the bill before us.

Tully had children by a former marriage, but they are in no way involved in this proceeding, directly or incidentally.

The agreement sought to be enforced was verbally made, and if enforceable, is one of adoption. The property involved in the controversy is personal.

The mother of complainant died on August 12, 1900. While on her death bed she expressed anxiety regarding the future of her daughter "Nellie," the complainant. At a family conference, at which were present Thomas C. Bermingham, his first wife, Belle Bermingham, Edward Tully, the father of complainant, and Mrs. Lillian M. Larson, a daughter of Edward Tully by his first wife, and while all of these persons were around the death bed of complainant's mother, Anna Bermingham Tully, it was agreed in substance as follows: That Anna Tully and Edward Tully, her husband, the parents of complainant, then and there promised and agreed with the Berminghams that in consideration of the said Anna and Edward Tully surrendering to Thomas C. Bermingham and Belle Bermingham, his wife, the care, custody and control of and complete dominion over complainant, who was then about the age of ten years, until she arrived at lawful age or should be married, the said Thomas and Belle would take and receive complainant into their home, make her their own child and a member of their own family, adopting her according to law, and care for, maintain and educate her and treat her in every way as they would a child born to them of their own marriage. The Berminghams also agreed that at their death complainant should have, take and become the sole and absolute owner of all the property owned by them.

This is the agreement averred in the bill, the parties to which and the witnesses, save complainant and her half sister, Mrs. Lillian M. Larson, died before the death of Thomas C. Bermingham. This agreement

was made in the presence of complainant, then an infant. Soon after the death of complainant's mother, in pursuance of the agreement between the parents of complainant and Thomas C. and Belle Bermingham, complainant's father surrendered her to the Berminghams and gave them absolute control and dominion over her, and did never thereafter interfere with such control or demand any right of control over complainant. From the time of such surrender until the death of Belle Bermingham and thereafter until complainant's marriage, which was a considerable time after she attained her majority, she remained and continued in the family of the Berminghams, and was treated and cared for by them as their own child. Complainant on her part was devoted to the Berminghams and cared for them in sickness as well as in health, giving to her foster parents all the devotion and duty due from a natural child to its parents.

Defendant in her answer admitted that the mother of complainant, Anna Tully, was a twin sister of Thomas C. Bermingham; that she was married to the father of complainant and that complainant was the fruit of such marriage; that the Berminghams had no natural child; that during the life of Belle Bermingham complainant was taken into the home of the Berminghams, cared for and treated by them as well as if she had been their own child; and that Belle Bermingham died on the 5th of January, 1912.

The answer denied the remaining allegations of the bill. Defendant was married to Thomas C. Bermingham March 28, 1914, and he died on May 20, 1914, about six weeks after the marriage.

The agreement to adopt complainant set out in the bill was sustained by the testimony of Lillian M. Larson, the only surviving witness to it, except complainant, who, being disqualified from testifying under the statutes of this State, was not proffered as a witness. Many witnesses, uncontradicted and unimpeached, tes-

tified to many conversations with the Berminghams, and particularly with Thomas C. Bermingham, regarding statements made by them in affirmance of the agreement set out in the bill, and no witness testified, directly or by inference, to the effect that either of the Berminghams denied the existence of such an agreement. The jury found the issues in favor of the agreement in all its terms, and the further fact that the Berminghams complied with their part of it by receiving complainant into their family and exercising complete control over her. These facts appear from the answers of the jury to five issues of fact propounded to them by the court, and with the finding of the jury on these issues of fact the learned chancellor before whom the cause was tried has evidenced his concurrence by refusing to grant a new trial and in entering the decree found in the record. The verdict is not like one at law; it is simply advisory to the chancellor.

The evidence is voluminous, and to repeat or discuss it at length would serve no useful purpose. An examination of all the pertinent evidence found in the record constrains us to be in accord with the jury's finding that the agreement of adoption was made, carried out and executed in accord with its terms as alleged in the bill. The agreement having been established by the evidence, its construction, legal purport and effect were matters of law for the determination of the chancellor. The construction of the agreement by the chancellor was, we think, erroneous in the respects which we shall hereafter indicate. Before proceeding to do so, however, we will dispose of certain objections made by defendant affecting procedure.

We do not regard as unethical or as infringing in any way the rights of defendant the challenged remarks of complainant's counsel to the jury.

Defendant gave notice of the filing of her answer. Complainant's replication thereto was not filed until

after the statutory time. Upon the trial defendant moved to strike the replication from the record, which the chancellor refused to do. Defendant thereafter participated in the trial to its conclusion without further objection or other motion. By so proceeding the objection was waived. Moreover, the motion to strike was addressed to the sound discretion of the chancellor. We are unable to discover that the action of the chancellor in denying such motion was an abuse of judicial discretion.

The rulings of the court on the admission and rejection of evidence are without reversible error.

The objection to the want of necessary parties is without force. The parties interested in the contract, the subject-matter of the suit, were complainant and defendant. No other persons had any rights in the subject-matter of that contract. If the contract failed, the property of Bermingham being personal and Bermingham dying intestate and without descendants, the defendant, as his widow, would take all of the personal estate, subject to payment of debts and costs and expense of administration under the statute of descent. If complainant sustained the contract, then she and the defendant are the only persons entitled to a share in the property. *McClure v. Otrich*, 118 Ill. 320.

While the Statute of Frauds is invoked in the answer of defendant, it is not pleaded. In *Tarleton v. Veites*, 6 Ill. 470, the court say:

"It is a settled principle in equity that a party to avail himself of the benefit of the Statute of Frauds must specially insist on it. If he fails thus to rely on it, he will be deemed to have waived and renounced the advantage to be derived from its provisions." *Whiton v. Whiton*, 179 Ill. 32.

At the time the agreement in question was made, the father of complainant was in failing health, and later died. He made application for letters of guardianship of complainant in Winnebago county, Illinois, and

thereafter applied for an order to sell real estate in which complainant was interested. While in fact complainant was residing with the Berminghams in Cook county at this time, her father stated in the papers filed that her residence was in Winnebago county, and the court so found. No action, however, of her father in this or any other proceeding is binding upon her. Neither does it tend to prove any fact *dehors* her interest or right.

We fail to find any error in the court's instructions to the jury. It was not error to refuse to instruct the jury that complainant was required to prove the contract alleged "by direct and positive evidence" and in substituting therefor that the contract must be proven by a preponderance of the evidence. Proof of the agreement by a preponderance of the evidence satisfied legal requirement. This is elementary.

Much stress is laid upon the alleged fact that defendant intermarried with Thomas C. Bermingham with a knowledge of the agreement regarding complainant's adoption, that she was agreeable to it and agreed to be bound by it, and also agreed that she would not assert any rights in her husband's estate in derogation of such agreement. We think it immaterial to the rights of complainant whether defendant agreed to the agreement or not. If the agreement bound Bermingham, it is patent that defendant's rights in his estate, whatever they might be, were subject to it.

We do not think it was the intention of the parties to the agreement that all of the estate and property of Thomas C. Bermingham and his wife, Belle Bermingham, should vest in and go to complainant upon the death of either of them. The language of the agreement will not permit of such a construction. What the Berminghams did by this agreement was to agree to make complainant their child, with all the rights which she would have in their estate if she were legally

adopted or was a child begotten of their marriage. What was to be accorded to complainant was the rights of a natural child of the Berminghams—no more and no less.

It does not appear that Belle Bermingham had any separate estate at the time of her death. If her husband had predeceased her and the agreement is to be literally construed as the chancellor did construe it, then complainant would have taken all of the property of her foster father to the exclusion of her foster mother, leaving the latter without property or support of any kind.

The Berminghams were by their agreement to make complainant their own child and a member of their own family, care for, maintain and educate her as such, the same as though she were a child born to them of their marriage, and she should at their respective deaths have, take and become sole and absolute owner of all the property owned by each. This must be limited by construction to mean that complainant would take of the estate of her foster parents, had they died intestate, to the same extent as she would had she been born as the fruit of their marriage, and no more; that is, she would take the share of a natural child under the statutes of descent of this State, and not otherwise.

If the agreement was binding it bound the parties at the time it was made. Can it therefore be said that if before the death of Belle Bermingham a child had been born to her and her husband, this agreement would have deprived such child of any share in its parents' estates? Such a condition would result if the decree of the chancellor can be maintained in its entirety. It is self-evident that such a result would be unconscionable and inequitable. Complainant's rights under the agreement were those of a natural child. This is undoubtedly what the parties meant and had in mind at the time the agreement was entered into. This

is our interpretation of the language proven to have constituted the agreement.

In further illustration of this contention we will suppose that Thomas C. Bermingham predeceased his wife Belle. In such event she, as his widow, would have been vested, upon her husband's death, with one-third of the personalty of which he might die seized, together with the right to a widow's award under the statute, assuming he died intestate. Being so vested and lacking any heir, if at Bermingham's death complainant had survived her and Bermingham, complainant would have been entitled to all of the estate of which Belle Bermingham might have been seized and possessed at the time of her death; and at the death of Thomas C. Bermingham, if he had died without having again married and without child or children by any subsequent marriage, complainant would have been entitled to and become vested with the whole of the estate and property which he might own at his death. Such interpretation gives effect to the provision that complainant should have, take and become sole and absolute owner of all the property owned by the Berminghams at their death. There is nothing in the agreement which either by word or construction would justify a court of equity in holding that if Thomas C. Bermingham again married after the death of his wife Belle and the wife of his second marriage survived him she should be deprived of all claim and interest in and to the property of which he might die seized. We therefore construe the agreement under which complainant claims as vesting her with the property interest which she would have taken were she the natural child of Thomas C. and Belle Bermingham at the death of Thomas C. Bermingham, and that she is consequently entitled under the agreement to be vested with that share of Thomas C. Bermingham's estate which would be distributable to her were she his only heir at law, subject only to the rights of defendant as his widow.

On the question of sufficiency of consideration to support the agreement of the Berminghams and Tullys for the benefit of complainant, there are many cases holding in effect that the elements found in the instant case constitute a sufficient consideration to uphold and make enforceable the agreement. We will rest content with quoting from *Roberts v. Roberts,* 223 Fed. 775, as being in many of its essential particulars akin to the case at bar and possessing many circumstances similar to those environing the parties in this case. The court say, quoting from *Lynn v. Hockaday,* 162 Mo. 111:

"The life of that whole family in reference to this child, from the time she was first taken into it until the death of Mr. Lynn, would have to be construed to be a deception and a fraud, if we would give to it the effect that respondents claim for it. It is argued that her relatives were poor, and that she has had in the family of Mr. Lynn a better home and more refined rearing than she would have had if he had not taken her. That may be; but it does not follow as a legal conclusion that the reward was all on her side, or even that it was her gain at all. That she took the place of an only daughter in the lives of Mr. and Mrs. Lynn, and performed her part as such, is the cold fact which the law regards as sufficient consideration to support the contract. How much she added to their happiness the law does not undertake to estimate. * * * Like a bud that has been cut from its natural stem and grafted into a foreign tree, she grew into the family and became a part of its very life. Everything that adoption contemplates was accomplished. It became a contract fully performed on her part, and the Statute of Frauds cannot be invoked to her injury."

Complainant filled the void in the Bermingham home occasioned by the lack of children and became a daughter in the truest sense to her foster parents. They were proud of her and she was devoted to them. She made their lives happy and their home a place of sunshine by her devotion and care of them, which continued un-

til the death of Belle Bermingham and after her death and until complainant's marriage. Even after that event she continued to be a part of the household of Thomas C. Bermingham, and was just as kind, considerate and careful of him and his comforts as she had theretofore been of both himself and his wife. The court further said in *Roberts v. Roberts, supra:*

"The argument by which we are asked to reverse the decree is that there was no direct and clear evidence of an agreement to adopt at the time Myra J. Roberts was received into the family of Charles J. Roberts. There is good reason why such evidence is wanting. All of the parties to the transaction are dead, and Myra J. Roberts was herself a babe at the time of adoption. It seems to us that in such a case it is not necessary that the court first have direct proof of the making of the contract, and then proceed forward from the contract thus established to the conduct evidencing its existence. We think it is possible to reverse that process, and if the statements and conduct of the adopting parents are such as to furnish clear and satisfactory proof that an agreement of adoption must have existed, then the agreement may be found as an inference from that evidence."

The foregoing *dictum* is equally applicable to the case of complainant, but her case is stronger than that of the adopted child in the *Roberts* case *supra.* In the *Roberts* case all the witnesses to the original agreement were dead. In complainant's case her half sister, Lillian N. Larson, who heard the agreement made at the death bed of Anna Tully, survived and testified in court to what that agreement was. *Gladville v. Mc-Dole,* 247 Ill. 34. As said in *Grantham v. Gossett,* 182 Mo. 653:

"Oral contracts of the kind stated in the petition, when proven according to the standard of proof required, and shown to have been performed on the part of the parent and that of the child, when to suffer it to go unenforced would be to suffer a fraud to be perpetrated, will be decreed to be specifically performed."

The agreement in controversy in this case is an oral agreement. It has been proven according to the standard of proof which the law requires and is shown to have been performed in its several parts by all the parties to it; it would therefore be suffering a fraud to now refuse to decree that it be specifically performed.

The decree of the Superior Court is reversed and the cause is remanded with directions to the Superior Court to enter a decree in the terms of the decree appealed from, varying the same to conform to the views herein expressed, and ordering in that decree that the complainant and defendant are the sole and absolute owners of all the property left by Thomas C. Bermingham, deceased, subject to the payment of the debts, widow's award and the costs and expenses of the administration of his estate; that the defendant, as administratrix of the estate of Thomas C. Bermingham, deceased, and in due course of its administration, turn over and surrender and deliver to the said complainant two-thirds of the said property left by said deceased, whether the same be money, notes, corporate stock, bonds, or other evidence of indebtedness, and also all other personal property left by said deceased; that said defendant retain one-third thereof as her own individual property as widow of said Thomas C. Bermingham, deceased; that the property aforesaid, in the proportions aforesaid, be delivered to complainant and retained by defendant as aforesaid after the payment to defendant of such widow's award, as may be allowed by the Probate Court of Cook county, where the estate of Thomas C. Bermingham is in process of administration, and subject to all debts proven against the said estate and the costs and expenses of its administration; that said defendant pay and deliver to complainant and retain for herself all the estate of said Thomas C. Bermingham, deceased, in manner as herein directed, in the due course of administration of the estate of said deceased in the Probate Court of

Cook county.   The costs here and in the Superior Court are ordered to be taxed against complainant and defendant in equal portions.        ·

*Reversed and remanded with directions.*