(No. 21034.

ALTA KRAMER, Appellant, *vs.* MARY COOPER *et al.* Appellees.

*Opinion filed February 19, 1932.*

I. R. Wasson, and Harry C. Heyl, for appellant.

Hugh E. Wilson, for appellees.

Mr. Chief Justice Stone delivered the opinion of the court:

Appellant filed a bill in the circuit court of Peoria county seeking specific performance of a contract for adoption. The bill sets out the following facts: Appellant is the daughter of Curtis and Grace Fountaine. She was born in 1905. Her mother died in 1907, leaving appellant and three other minor children. Curtis Fountaine advertised in Peoria newspapers for homes for his children. Louis and Lucinda Langenberg resided in Peoria. They had no children and were desirous of adopting a child. On their request appellant's father let them take his daughter Edna, a sister of appellant, to live with them as their child. Edna did live with the Langenbergs until about December 1, 1912, when she died. She was not adopted by the Langenbergs although the bill alleges that there was an understanding that she was to be. From the time of the death of her mother appellant lived with her grandmother, Martha J. Fountaine, and immediately after Edna's funeral the Langenbergs sought to secure the consent of appellant's father to have appellant live with them as their child in place of her sister Edna. The bill alleges that pursuant to such request, and solely upon the express condition that the Langenbergs would adopt and receive appellant as their own child and that at their death she should inherit all of their property, her father consented to let them have her, and that she went to live with the Langenbergs on December 18, 1912, took their name, was registered in school as Alta Langenberg, assisted with the housework, was always introduced by the Langenbergs as their daughter, and after she left school, and up to June 4, 1923, when she was married, she worked outside the home and turned over to the

Langenbergs her wages, except enough for her clothing and a little spending money. About a year after her marriage, on the birth of her son, she and her husband moved to their own home. The bill further alleges that the Langenbergs, during fifteen years prior to their death, repeatedly stated that appellant was to have all their property at the death of the survivor of them; that they always intended to fulfill their agreement of adoption by legal proceedings according to the statute but the matter was allowed to go by, all parties feeling that to all intents and purposes appellant was as fully their child as though she had been legally adopted, and that on January 21, 1929, Louis Langenberg died, and his wife died about thirty-six hours thereafter without an opportunity to carry out their intention to protect appellant. The bill also sets out the property owned by the Langenbergs and the value thereof and the names of the heirs-at-law of Lucinda Langenberg, and prays specific performance of the contract that appellant be declared to be the lawful adopted child of Louis and Lucinda Langenberg and the legal heir to the property. Answers filed by appellees, heirs-at-law of Lucinda Langenberg, denied the allegations concerning a contract for adoption, denied the right of appellant to be declared the sole heir of Lucinda Langenberg and pleaded the Statute of Frauds. One T. C. Grady, administrator of the estate of Lucinda Langenberg, was made a party defendant and answered the bill, denying the making of the contract or the right of appellant to be declared the sole heir of Lucinda Langenberg. On Grady's death the Central National Bank and Trust Company of Peoria was appointed administrator *de bonis non* and made a party defendant. The answer of Grady as administrator was allowed to stand as its answer. The circuit court dismissed the bill for want of equity.

There is no dispute in the evidence. It clearly shows that appellant went to the home of the Langenbergs, lived there until the time of her marriage, took their name, and

that the relations between her and the Langenbergs were those of daughter and parents. The serious question presented in the case is whether the evidence establishes the contract alleged in the bill. The only allegation in the bill relating to that matter concerns a contract alleged to have been made with Curtis Fountaine, the father. Curtis Fountaine died April 25, 1919. The bill is based on such a contract, and it is a familiar rule of law that where, as here, specific performance is sought of an oral contract of adoption, the effect of which is to make disposition of the property of one of the parties to the contract different from that provided by law, a court of equity accepts with caution and weighs scrupulously the evidence of such contract before granting the relief sought. The evidence must be clear, explicit and convincing that such a contract existed. (*Yager* v. *Lyon,* 337 Ill. 271; *Keller* v. *Joseph,* 329 id. 148; *Davier* v. *Kaiser,* 280 id. 334; *Woods* v. *Evans,* 113 id. 186.) This is the standard of proof required in such cases. The undisputed evidence concerning the contract is, that after the death of Edna the Langenbergs went to the home of Martha J. Fountaine, grandmother of appellant and stepmother of Curtis Fountaine, appellant's father, and in the presence of appellant's father requested that they be allowed to take appellant as they had taken her sister, stating that they wanted to adopt her and would treat her as their own child. There is no evidence, however, that Curtis Fountaine consented to such an arrangement or that any agreement was entered into at that time. The only evidence in any way connecting Curtis Fountaine with such an agreement, or which shows what his agreement was, is that of Martha J. Fountaine, the grandmother. She testified that she had a conversation with him about appellant's going to live with the Langenbergs. He said that he hated to take her away from her grandmother because she was so attached to her but called attention to the situation appellant would be in if her grandmother died. He expressed con-

fidence that the Langenbergs would be good to her, saying, "I am sure they will be good to Alta; that is the only reason I want to make a change." This witness then said they wanted to adopt her, but he objected; that he said, "I don't feel like giving one of my children away." She was then asked the question, "What did he say to you, so far as Alta's going to live with them?" to which she answered, "He said to use my own judgment." Testimony of numerous witnesses showed statements of the Langenbergs in which they said they expected to do by appellant as they would by a daughter and that they were taking her as their daughter. It is also significant as affecting the question of the existence of a contract with the father of appellant as alleged in the bill, that the Langenbergs, after the death of Curtis Fountaine, expressed relief, because they said they had feared that Curtis Fountaine might marry again and take Alta away from them. Had he made a contract of that character, he, of course, would not have had the right to take her away. The fact that they did not adopt her is also evidence that he did not make a contract of that kind with them. We are of the opinion, therefore, that the contract alleged in the bill is not proved. There is no doubt that appellant has performed her obligations as a child of the Langenbergs, yet the settled law is that to be entitled to a decree for specific performance of a contract for adoption it is necessary that that contract be proved as laid in the bill and according to the standard of proof required. (*Hutton* v. *Busaytis,* 326 Ill. 453; *Hickox* v. *Johnston,* 3 Kan. 99; *Odenbreit* v. *Utheim,* 131 Minn. 56; *Crawford* v. *Wilson,* 139 Ga. 654.) The testimony of the neighbors and friends of the Langenbergs concerning statements made by the latter is evidence of the intention of the Langenbergs to provide for appellant by adopting her or by conveying property to her, but this is not sufficient to establish a binding agreement between them and the father of appellant to adopt her, and the courts are without

authority to declare property vested in her without proof meeting the established standard in cases of this character. *Hutton* v. *Busaytis, supra.*

Since appellant failed to prove the contract alleged in the bill a court of equity is powerless to give relief. The chancellor was therefore right in dismissing the bill for want of equity, and the decree is affirmed.

*Decree affirmed.*