(Nos. 31139-31169.—

NETTIE FRANZEN *et al.*, Appellants, *vs.* KATHRINA HALL-MER *et al.*, Appellees.

*Opinion filed January 18, 1950.*

CHARLES J. RUSSELL, and PERRY & ELLIOTT, both of Wheaton, for appellants.

LOUIS J. VICTOR, MCKINLEY & PRICE, and MARCH & ROSSITER, all of Chicago, and WILLIAM C. ATTEN, of Wheaton, (LYLE H. ROSSITER and PAUL E. PRICE, of counsel,) for appellees.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Nettie Franzen filed a complaint in the circuit court of Du Page County for specific performance of an alleged oral agreement to declare her the legally adopted child of Henry Hallmer and to entitle her to inherit his estate as such legally adopted child. The complaint was filed against Kathrina Hallmer, individually and as administratrix of the estate of Henry Hallmer, deceased, Henry Hallmer, Mary Schulz, William J. Leavy, also known as William J. Le Vay, Viola Seelau, Anna Olbrig, Sophie Kempert, Anna Wohler and Theresa Oliver. The defendant William J. Le Vay filed a counterclaim in which he prayed that he be declared the legally adopted child of said Henry Hallmer, and that he be entitled to inherit his estate as such legally adopted child. Answers were filed by each of the defendants to plaintiff's complaint and to the counterclaim filed by William J. Le Vay, denying all allegations concerning each of the alleged contracts or agreements for adoption and denying the right of plaintiff and counterclaimant to be declared heirs of the said Henry Hallmer, deceased, under and by virtue of any adoption contract, and, further, denying the right of said plaintiff or counterclaimant to the specific performance prayed for in said complaint and counterclaim. After disposition of motions an order was entered by the court to refer the case to a master in chancery for a full

hearing. The master found that plaintiff, Nettie Franzen, failed to prove by competent evidence the contract alleged in her complaint, and that counterclaimant, William J. Le Vay, formerly William J. Leavy, failed to prove by competent evidence any or either of the contracts alleged by him in his counterclaim, and recommended that the complaint of plaintiff, Nettie Franzen, and the counterclaim of William J. Le Vay each be dismissed for want of equity. Exceptions to the master's report were overruled and the complaint and counterclaim were dismissed for want of equity.

Nettie Franzen, plaintiff, and William J. Le Vay, counterclaimant, appellants here, were born in Buffalo, New York, the children of John and Barbara Leavy. Barbara Leavy departed this life in the year 1904 and John Leavy died in 1905. After the death of the said Barbara Leavy, said John Leavy placed plaintiff, then of the age of about six years, and her brother, William, then of the age of about seven years, in the care of an orphanage in Buffalo, New York. Shortly after plaintiff's admission to said orphanage she was taken therefrom by her uncle, John Hallmer, of Buffalo, New York. It is alleged that while she resided with him she was taken to the home of another uncle, Henry Hallmer, and his wife, Mary Hallmer, who had no children and who resided in Chicago, Illinois; that plaintiff continued to live with them until the death of Mary Hallmer; that subsequent to the death of Mary Hallmer said Henry Hallmer married Kathrina Hallmer; that plaintiff resided in the home of said Henry Hallmer until her marriage at the age of twenty-one years.

William J. Le Vay, after the death of his parents as aforesaid, was admitted to the German Roman Catholic Orphanage, Buffalo, New York, at the age of seven years. On May 29, 1906, while he was still in said orphanage, Henry Hallmer, uncle of counterclaimant, and Mary Hallmer, his wife, being the same persons mentioned in plain-

tiff's complaint, entered into negotiations with said orphanage for the adoption of counterclaimant. It is alleged that after said negotiations counterclaimant was taken to the home of Henry and Mary Hallmer and continued to reside there until he became twenty-one years of age.

It is contended by the appellants that the trial court erred in overruling exceptions to the master's report, and erred in failing to enter a decree granting to the plaintiff and counterclaimant specific performance as prayed for by them. In all cases for determination upon contracts of adoption the question is always presented as to whether or not the evidence is sufficient to establish the existence of a contract, the parties thereto and the terms thereof, as to warrant specific performance.

The findings of fact as shown by the master's report are as follows:

"After considering all of the testimony and evidence adduced in said cause, the undersigned further finds and reports the following matters of fact to be true:

"That said Henry Hallmer and Mary Hallmer were husband and wife, and were united in marriage in Lake County, in the State of Indiana, on the 20th day of March, 1911.

"That said plaintiff, Nettie Franzen, said counterclaimant, William J. Le Vay, and the defendant, Viola Seelau, were children of John Leavy and Barbara Leavy, and were born in the City of Buffalo, in the State of New York; that upon the death of Barbara Leavy in 1904 they were placed in the German Roman Catholic Orphan Asylum in said City of Buffalo; that subsequent to being placed in such orphanage said Nettie Franzen (born Nettie Leavy) and said William J. Le Vay (born William J. Leavy) were taken from said orphanage by the said Henry Hallmer, or John Hallmer, his brother, or one of them, and placed in the home of said Henry Hallmer and Mary Hallmer located at 1320 South Spalding Avenue, Chicago, Illinois; that a portion of said residence was converted into a small grocery

store which was conducted by said Henry and Mary Hallmer, and that in addition thereto Henry Hallmer owned and operated a coal and ice business.

"That plaintiff, Nettie Franzen, was born June 12, 1898, and was taken into the Hallmer home during the year 1905 where she resided until her marriage at the age of 21 years, and that during all of said period she was known and described as Nettie or Antoinette Hallmer; that said counterclaimant, William J. Le Vay, was born June 25, 1896, and was taken into the Hallmer home during the year 1906 where he resided until his marriage on or about September 30, 1920; that during each period he was known as William or Billy Hallmer, but that he was married under the name of William J. Leavy.

"That while plaintiff resided in the home of Henry and Mary Hallmer she assisted in waiting on customers in the store and aided in the housework in the home; that she attended a parochial school known as 'Our Lady of Perpetual Help' under the name of Antoinette Hallmer substantially from the time she came into the Hallmer home until she arrived at the approximate age of 14 years.

"That while counterclaimant resided in the Hallmer home he performed certain duties, carrying in wood and coal for use in the home, cared for the horses used in the coal and ice business, assisted in hauling ice to customers during school vacation periods, and in the later years worked with said Henry Hallmer on the wagon delivering ice to the family trade; that he attended a parochial school known as 'Our Lady of Perpetual Help' under the name of William Hallmer from 1909 until he arrived at the age of 14 years.

"That plaintiff was taken by said Henry Hallmer to receive her first sacrament of Holy Communion at the church of 'Our Lady of Perpetual Help,' Chicago, Illinois, under the name of Antoinette Hallmer during the year 1910, and was confirmed in the same church under the

name of Antoinette Hallmer on October 9, 1913; that counterclaimant received his first communion under the name of W. Hallmer on May 17, 1908, at 'Our Lady of Perpetual Help' church in Chicago, Illinois.

"That the census record of the Department of Commerce of the United States of America for the year 1920, taken as of January 1, shows that the Hallmer family resided at 1320 Spalding Avenue, in Cook County, Illinois; that the head of the family was Henry Hallmer; that Mary Hallmer was the wife; that William Hallmer was a foster son; and that Antoinette Hallmer was a foster daughter.

"That due to circumstances which arose in connection with the draft during the First World War said counterclaimant was registered as William J. Leavy, and that immediately subsequent to his marriage he changed his name to William J. Le Vay, and has since been known as William J. Le Vay.

"That including plaintiff, eleven witnesses testified for the plaintiff; that some of such witnesses also testified relative to the counterclaimant, and his own testimony was submitted in the form of a deposition. Numerous written documents were submitted in behalf of both plaintiff and counterclaimant. From the testimony of witnesses it is definitely established that on numerous occasions Henry Hallmer and Mary Hallmer stated to friends and neighbors that they had adopted said plaintiff and counterclaimant; that they were the children of a deceased sister of Henry Hallmer; that they frequently spoke of them to friends and acquaintances as their children, and on one or more occasions introduced plaintiff as their daughter; that Henry Hallmer rented a safety deposit box from the Greenebaum Safe Deposit Company of Chicago in the joint names of Henry Hallmer, Mary Hallmer and Nettie Hallmer; that Henry Hallmer purchased bonds and securities from Greenebaum Sons Investment Company and that plaintiff had access to said safety-deposit box and clipped coupons

from the securities deposited therein. It further appears from the testimony that both plaintiff and counterclaimant addressed Henry Hallmer and Mary Hallmer as 'Pa' and 'Ma' and were treated in most respects as if they were the natural children of said Henry and Mary Hallmer. It is further shown that Henry Hallmer and Mary Hallmer never paid to said plaintiff or said counterclaimant, or either of them, any compensation in the form of wages for the services which they rendered to them; that the relationship existing between Henry Hallmer and Mary Hallmer and plaintiff and counterclaimant, was such that their neighbors and friends regarded plaintiff and counterclaimant as being the children of the Hallmers; and that the fact that plaintiff and counterclaimant had not been legally adopted by the said Henry and Mary Hallmer was not known to them until each of them had arrived at an adult age.

"No testimony was adduced on the part of the defendants, with the exception of counterclaimant, William J. Le Vay.

"That Mary Hallmer departed this life during the year 1930; that subsequent to her death Henry Hallmer intermarried with one Kathrina Hallmer who is still living; that said Henry Hallmer departed this life, intestate, at Downers Grove, Illinois, on March 26, 1944; and that his widow, Kathrina Hallmer, was appointed Administratrix of his estate by the Probate Court of Du Page County, Illinois, and that she qualified and is still acting in such capacity."

In addition to said statement, we wish to add only that in 1906 Henry Hallmer and Mary Hallmer, the wife, were living together as husband and wife and held themselves out to the world and to plaintiff and counterclaimant as such; that they were then conducting a coal and ice business at 1320 South Spalding Avenue in Chicago, Illinois,

which was the residence to which plaintiff and counter-claimant were taken by them to live and work, although they were actually married in 1911.

We have set out in full the report of the master because, after an examination of the record, we are of the opinion the evidence justifies same, and it is suggested by appellants that no better statement could be made, and that the same was in nowise questioned before the court.

If the evidence supports the findings of fact the question then for determination is as to whether or not it is sufficient to establish the existence of an oral contract of adoption as to which specific performance should be enforced. That such a contract must be alleged and proved is admitted by both appellants in their complaint and counterclaim, and it is urged the allegations made are sufficient and that proof is made accordingly.

Appellants first contend an oral agreement of adoption need not be proved by direct evidence. It is urged they were the children of a sister of Henry Hallmer and were in the custody of an orphan's home in New York at the time they were taken by the said Henry Hallmer, both children being of tender years; that the records of the orphan's home were admitted in evidence and established those facts; that from the time the children came into the home of Henry and Mary Hallmer, who were not legally married, (the marriage ceremony occurring in 1911 and the children having come into the home in 1905 or 1906,) said children were treated the same as natural children; that they were given the name of Hallmer and referred to the Hallmers as "Ma" and "Pa" in talking to non-members of the family; that they performed services in and about the home and in connection with the business operated by Henry Hallmer; that they remained in that home under such conditions until they reached their majority, at which time both married and left. Appellants urge that

the conditions under which the children lived are consistent only with the conclusion that they were either adopted or should have been adopted. Many circumstances are pointed out in which it is contended that the only reasonable inference to be drawn is that they were taken into the home for the purpose of adoption, and that Henry and Mary Hallmer had agreed orally to adopt them.

Appellants cite the case of *Lee* v. *Bermingham*, 199 Ill. App. 497, which quotes from the cases of *Roberts* v. *Roberts*, 223 Fed. 775, and *Lynn* v. *Hockaday*, 162 Mo. 111. These cases are not in any way controlling and are not comparable to the instant case. It is apparent there was evidence there of a contract and a promise and agreement on the part of the parties. We find no evidence here of any agreement by Henry Hallmer to adopt either of appellants, or that the Catholic orphanage, from whence they came, had any authority to consent or in any way participated in any manner toward permission or the carrying out of the adoption.

The case of *Winkelmann* v. *Winkelmann*, 345 Ill. 566, presents facts and circumstances that are not comparable to the identical facts in this case. In the *Winkelmann case* it was clearly shown by the evidence that Winkelmann said he and his wife would take the baby and adopt her as their legal child. Witnesses testified that Winkelmann and his wife said they would like to adopt the child and make her their own. The evidence showed, as found by the court, that an agreement to adopt was made and its terms were reasonable, clear and specific. It was there pointed out that evidence was offered in which a conversation took place between Winkelmann and Albrecht, father of the child, in which the question of adoption of the child by Winkelmann and his wife was discussed.

Appellants also cite the case of *Soelzer* v. *Soelzer*, 382 Ill 393, where a child was taken out of an institution into

a home. At the time the child was taken from the home a written contract of adoption was prepared and signed by the home, but was not signed by the Wedemeiers. The agreement of adoption signed by the home was with Mrs. Wedemeier's private papers at the time of her death and the manner of preserving it established her as a party the same as if she had signed it. The instant case is not supported by any writing and no evidence of the time, place, terms or parties is shown in connection with the alleged oral contract.

Appellants contend that the necessity of the proof being clear and convincing means it is greater than the preponderance of the evidence and less than the evidence establishing a fact beyond a reasonable doubt, and when circumstantial evidence is depended upon to prove a civil case, the rule is that a preponderance is all that is necessary. It is our judgment that it is unnecessary to discuss technical phases pertaining to the degree of proof, for the reason that we have laid down the rule in such cases that the evidence must be clear, explicit and convincing that such a contract existed. *Kramer* v. *Cooper,* 347 Ill. 293; *Yager* v. *Lyon,* 337 Ill. 271; *Keller* v. *Joseph,* 329 Ill. 148; *Davier* v. *Kaiser,* 280 Ill. 334; *Woods* v. *Evans,* 113 Ill. 186.

After a careful examination of the evidence here, we are of the opinion it fails to establish the existence of a contract of adoption by the standard of proof required in such cases. For that reason, the decree of the court in sustaining the report of the master in chancery and entering the order to dismiss the cause for want of equity, is correct, and is affirmed.

*Decree affirmed.*